HFTP INVESTMENTS, L.L.C., a
New York limited liability
company, Plaintiff,

v.

ARIAD PHARMACEUTICALS, INC., a
Delaware corporation, Defendant.

Civil Action No. 17501.

Court of Chancery of Delaware,
New Castle County.

Submitted: Nov. 22, 1999.
Decided: Dec. 7, 1999.
Revised: Dec. 9, 1999.

David A. Jenkins of Smith Katzenstein & Furlow, Wilmington; and Allan M. Pepper and Michael Braff, of Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Plaintiff.

Kevin G. Abrams and Thomas A. Beck of Richards, Layton & Finger, Wilmington; and Irwin H. Warren, Richard W. Slack and Timothy E. Hoeffner of Weil,

Gotshal & Manges, New York City, for Defendant.

## *OPINION*

JACOBS, Vice Chancellor.

Pending is a motion to stay this action brought by HFTP Investments, L.L.C., ("HFTP") for injunctive, declaratory, and damage relief, against the defendant, AR-IAD Pharmaceuticals, Inc. ("ARIAD"). HFTP claims that ARIAD has wrongfully refused to honor HFTP's right both to convert and to have redeemed shares of ARIAD Series C Convertible Preferred Stock (the "Preferred Stock") that HFTP acquired for $3,000,000 in 1998.

HFTP filed this action on October 26, 1999. Thirteen minutes later, ARIAD filed an action (the "New York action") against HFTP and its investment advisor, Promethean Investment Group, L.L.C. ("Promethean") in the United States District Court for the Southern District of New York (the "Southern District"). AR-IAD's New York complaint asserts claims under both the Securities Exchange Act of 1934 ("Exchange Act"), and state common law, based upon the identical set of facts that will be presented to this Court. Stated differently, the defenses ARIAD will raise in this Delaware action are asserted as affirmative claims for relief in the New York action, specifically, claims for a declaratory judgment that ARIAD properly refused to convert (and, later, to redeem) HFTP's Preferred Stock, because HFTP (and Promethean) had made misrepresentations to ARIAD and had also wrongfully manipulated the price of ARIAD's stock.

Later that same day, HFTP moved for expedited proceedings in this case. The next day, ARIAD filed a motion to dismiss or stay this action in favor of its New York action. At an office conference held on October 29, 1999, this Court tentatively scheduled a trial date for January 18–21 and 24, 2000, subject to a ruling on AR-IAD's motion to dismiss or stay. The parties subsequently briefed and argued that motion,[1] which will be denied for the reasons discussed below.

## I. RELEVANT FACTS [2]

ARIAD is a Delaware corporation with its principal place of business in Cambridge, Massachusetts. The company's common shares are traded on the NAS-DAQ National Market. ARIAD develops novel and proprietary drug. products based on its knowledge of the inner workings of cells and the genes involved in disease.

HFTP is a New York limited liability company engaged principally in the business of investment and financial services. Promethean (which is not a party to this action) is a New York limited liability company also principally engaged in the business of investment and financial services. Promethean is an affiliate of HFTP, and is also its investment manager.

On November 8, 1998, HFTP and AR-IAD entered into a Securities Purchase Agreement (the "Agreement") whereby HFTP acquired 3,000 shares of ARIAD Series C Preferred Stock for $3 million. The validity and enforceability of the Agreement is governed by New York law, but the terms under which the Preferred Stock may be converted into ARIAD's common stock are set forth in ARIAD's Certificate of Designations, which was filed with the Delaware Secretary of State. The Certificate of Designations provided holders of the Preferred Stock with the right to convert that stock into

---

1. At oral argument, counsel for ARIAD abandoned its motion to dismiss, conceding that the motion should be regarded solely as one for a stay.

2. Set forth in this Section are the background facts describing the dispute that underlies this action and the New York action, and leading to the motion *sub judice*. Other facts that relate to the specific *forum non conveniens* factors are discussed elsewhere in this Opinion.

ARIAD common stock from and after March 1999. The conversion rate would be determined by a formula, the denominator of which (in this case) is a "floating" Conversion Price. The effect of the floating Conversion Price is that if ARIAD's common stock drops during the 22 trading day period immediately preceding the conversion, the Conversion Price would be lower and, accordingly, the number of common shares issued in the conversion would be higher. HFTP's attempt to convert a portion of its Preferred Stock under this formula is what precipitated the dispute that eventuated in this litigation and the New York action.

At some point after HFTP acquired the Preferred Stock, HFTP (and Promethean) executed a series of short sales of ARIAD common stock.[3] ARIAD claims that HFTP (and Promethean) did this on a massive scale,[4] specifically to manipulate the price of its common shares downward in order to increase the number of shares HFTP could obtain on conversion. ARIAD contends that this short selling campaign caused the price of its common stock to be severely depressed, and thereby enabled HFTP to convert its Preferred Stock for many more shares of ARIAD common than it would have received absent this scheme to artificially depress the value of the common. HFTP vigorously disputes this claim.

This state of affairs prompted ARIAD to demand that Promethean and HFTP cease their short selling activities, because they possessed material nonpublic information about ARIAD's ongoing financing plans, which imposed upon HFTP and Promethean a duty not to trade ARIAD's stock.[5] HFTP does not deny that it (and its affiliate, Promethean) engaged in short selling activity, but insists that that activity breached no contractual or other duty owed to ARIAD, and was lawful in all respects.

On October 12, 1999, ARIAD announced that it had entered into a letter of intent to sell ARIAD's 50% interest in the Hoechst–ARIAD Genomics Center for $40 million in cash, plus other valuable consideration. ARIAD contends that the announcement of this development generated a significant increase in ARIAD's common stock price. The announcement also created significant financial exposure for Promethean, because of Promethean's obligation to immediately cover 2.5 million ARIAD shares that it had sold short. For this reason, ARIAD contends, HFTP immediately submitted a conversion notice to ARIAD on October 13, 1999, seeking to convert 612 of its 3,000 shares of Series C Preferred Shares into 1,078,038 shares of ARIAD common stock. ARIAD refused to honor the conversion request, because the request was based on stock prices that had been artificially lowered by Promethean's allegedly illegal short sales of ARIAD common stock while in possession of material inside information.

Thereafter, on October 14 and 20, 1999, representatives of ARIAD and Promethe-

---

**3.** A "short sale" involves a seller agreeing to sell stock it does not own and then (typically) borrowing the stock from a broker to tender to the purchaser. The seller eventually covers the short sale by returning an equivalent amount of stock to the broker. If the market price declines, the short seller profits from the short sale by being able to cover the short in the market by buying the securities at a lower price than the price for which the securities were previously sold.

**4.** ARIAD contends that at one point Promethean had a short position of 2.5 million shares of ARIAD—over 10% of ARIAD's total outstanding common shares.

**5.** That duty is claimed to have arisen from requests by ARIAD that HFTP waive a right of first refusal, conferred by the Purchase Agreement, regarding additional equity or debt financing that ARIAD was attempting to negotiate with potential investors during the summer of 1999. ARIAD contends that its communications to HFTP and Promethean about the progress of those financing negotiations constituted material, nonpublic information that could have affected the market price of ARIAD's common stock and hence, legally required HFTP not to trade that stock.

an attempted to negotiate a repurchase by ARIAD of HFTP's Preferred Stock. During these negotiations both sides were preparing their complaints, which would be filed in their respective jurisdictions of choice. Both sides were clearly engaged in a race to the courthouse, as the complaints in both actions were filed on the same day—October 26, 1999. Although HFTP won that race (albeit only by 13 minutes), the reasons for its "victory" are hotly contested. ARIAD contends that during the negotiations HFTP fraudulently misled it into refraining from filing in order to pursue further negotiations; HFTP denies this and contends that if anyone was misled, it was HFTP. Because this dispute involves controverted facts, it cannot be resolved on the present record. The Court is therefore unable to find (as ARIAD claims it should) that ARIAD was misled—or worse, defrauded—into delaying the filing of its federal complaint.

This action and the New York action both rest upon the same facts. The main difference between the two actions is that each is the mirror image of the other; that is, ARIAD's affirmative claims in its New York action constitute its defenses (and counterclaims) to HFTP's claims in this action, and HFTP's claims in this action constitute the basis for its defenses (and counterclaims) in the New York action. The other major difference is that in its New York action, ARIAD asserts claims under the Exchange Act.

6. Although the buyback right that HFTP asserts is characterized as a "redemption," from a functional standpoint that right is essentially a "put."

7. HFTP's notices of redemption, and the amendment of its Delaware complaint to assert claims based on ARIAD's refusal to honor those redemption notices, occurred after the office conference in which this Court scheduled a trial for January 2000 (subject to its ruling on this motion) in response to HFTP's asserted need for a prompt determination of its right to convert. Finding inequity in this sequence of events, ARIAD accuses HFTP of "bait and switch" tactics—inducing the Court to grant an expedited trial on the basis of the need for equitable relief, and then marginaliz-

In its original Delaware complaint, HFTP asserted claims for breach of contract (based upon the Certificate of Designations, the Purchase Agreement, and common law contract principles), and also claims under the Delaware Uniform Commercial Code and 8 *Del. C.* § 158. All of these claims are predicated upon ARIAD's refusal to honor HFTP's attempted conversion of its Preferred Stock. The relief HFTP requested was an order specifically enforcing HFTP's contractual right to convert. Thereafter, because ARIAD had not honored HFTP's notice of conversion by October 23, 1999, and because HFTP claimed that that failure constituted a "Triggering Event" that entitled HFTP to have its Preferred Stock redeemed under the Certificate of Designations,[6] HFTP submitted notices on November 1–3, 1999 ("Redemption Notices"), seeking the redemption of its remaining 2,388 shares of Preferred Stock for a total redemption price of $6,644,724.

ARIAD refused to honor these redemption notices as well and, as a result, HFTP amended its complaint in this action on November 8, 1999, to add new claims arising out of ARIAD's refusal to honor the notices of redemption.[7] The end result is that HFTP now seeks significant damage relief (to remedy the refusal to redeem) in addition to injunctive and specific performance relief (to remedy the refusal to convert).

ing that need by later adding a redemption-based damages claim whose significantly larger dollar magnitude dwarfs the equitable claim. I find no perfidy in HFTP's amendment of its complaint, and ARIAD has failed to show how HFTP's conduct bears upon the analysis of its motion to stay. The conversion claim that prompted me to schedule an expedited trial remains unchanged. HFTP was procedurally entitled to add a claim seeking redemption, and because HFTP contends (and ARIAD does not dispute) that its redemption right flows directly from an adjudicated breach of its conversion right, it is difficult to understand how the addition of that claim would materially alter the posture of the case.

In its original New York complaint, AR-IAD asserted federal securities law claims under §§ 10(b) and 13(d) of the Exchange Act, as well as state law claims, seeking declarations that HFTP was not entitled to convert its Preferred Stock and that AR-IAD had not acted wrongfully in refusing to convert that stock. ARIAD's federal securities claims are that HFTP and Promethean made misrepresentations that wrongfully induced ARIAD to sell Preferred Stock to them, and also engaged in unlawful manipulation, namely illegal short sales of ARIAD common stock while in possession of material non-public information about ARIAD. ARIAD's state law counts charge that the above described conduct (i) breached the Purchase Agreement by misrepresenting HFTP's and Promethean's investment intent, and (ii) breached HFTP's implied covenant of good faith and fair dealing in connection with the Purchase Agreement.

Thereafter, on November 8, 1999—the same day HFTP amended its complaint in this action—ARIAD amended its federal New York complaint, to add new claims relating to HFTP's redemption notices, and to seek a declaration that ARIAD was and is under no obligation to honor the notices of redemption because of the above-described wrongdoing by HFTP and Promethean.

To reiterate, this and the New York action are based upon the identical set of facts, and the claims asserted in each action are the mirror image of the claims asserted in the other. The current procedural posture of the New York action is that HFTP (and Promethean) have moved to dismiss the federal securities law claims on the ground that they are not legally cognizable under the Exchange Act. Insofar as the record discloses, neither side has sought expedited proceedings in the New York action. In this Delaware action AR-IAD has moved for a stay of all proceedings, contending that the Delaware claims are subsumed within the claims being asserted in the New York action, and that the Southern District is the appropriate forum to adjudicate those claims.

## II. THE CONTENTIONS AND ISSUES

A summary of the parties' positions has proved somewhat problematic, because in certain respects those contentions resemble the proverbial two ships passing in the night. Although the arguments appear on the surface to join issue, upon closer scrutiny they either do not or they do, but only tangentially. What follows, nonetheless, is the Court's best effort to overcome these obstacles.

In fairness, the parties do frontally join issue on the key threshold question: what action—this one, the New York action, or neither—is the "first filed." Analytically, that issue is pivotal because of the onerous standard a defendant must satisfy to deprive the plaintiff(in a first-filed action) of its choice of forum. ARIAD argues that although HFTC won the race to the courthouse by 13 minutes, that was solely because of HFTC's fraudulent (or, at minimum, inequitable) conduct, for which reason the New York action should be deemed first filed. Otherwise, this Court would be rewarding conduct that should not be countenanced. Therefore, ARIAD concludes, the Court must apply the *McWane* standard under which this Court's discretion "should be exercised freely in favor of the stay where there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues..."[8] ARIAD argues that its New York action satisfies these requirements.

Both parties agree that if this Delaware action is deemed to be first filed, then "a

---

8. *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Engineering Co.,* Del.Supr., 263 A.2d 281, 283 (1970).

motion to stay [the Delaware action]...should be granted only in a rare case, after defendant has established that litigating in Delaware will cause undue hardship and inconvenience."[9] HFTP argues that this standard should govern because this lawsuit is the "first filed" action. That is the case, HFTP claims, because (i) this action was in fact the first to be filed, (ii) ARIAD, not HFTP, was guilty of inequitable conduct, and (iii) in any event, the full array of claims that are common to both actions first appeared in HFTP's amended complaint in this action. These contentions require the Court to decide as a threshold issue which action—if any— was first filed.

Second, if the Court rejects both sides' threshold arguments and concludes that neither action is first filed (that is, if the Court determines that both lawsuits were "simultaneously filed") then additional issues arise. Both sides appear to agree that in that event the Court must employ a traditional *forum non conveniens* analysis of the so-called *Cryo–Maid*[10] factors. The parties differ, however, on what standard or burden of persuasion should govern that analysis. HFTP argues that to prevail on its motion, ARIAD must show that it would suffer "overwhelming hardship and inconvenience" by having to litigate in Delaware. ARIAD responds that it is not required to shoulder that heavy burden; rather it need only show that on balance the *Cryo–Maid* factors preponderate in favor of a stay.[11] Accordingly, the second

issue is what standard or burden of persuasion applies if this action and the New York action are deemed to have been simultaneously filed.

Once the appropriate *forum non conveniens* burden of proof standard is determined, the third and final issue becomes: what is the proper application of that standard to the facts of this case?

For the reasons next discussed, I determine that (1) both this action and the New York action should be deemed simultaneously filed; (2) as a consequence, ARIAD is not required to prove hardship and inconvenience, the Court is not required to give significant deference to HFTP's choice of forum, and the appropriate standard is whether, on balance, the *forum non conveniens* factors warrant the grant of a stay; and (3) the analysis and balance of those factors in this case do not preponderate in favor of staying this action.

## III. ANALYSIS

### A. Which Action (If Any) Was First Filed?

■ As previously noted, ARIAD argues, with considerable vehemence, that but for HFTP's inequitable conduct[12] its New York action would have been first filed, and that the Court should therefore deprive HFTP of the fruits of its misconduct and treat the New York action as first filed. I reject this argument as factually unsupported. Each side relies upon

---

9. *Acierno v. New Castle County*, Del.Supr., 679 A.2d 455, 458 (1996) (quoting *Chrysler First Business Corp. v. 1500 Locust Ltd. Partnership*, Del.Supr., 669 A.2d 104, 107 (1995)).

10. *General Foods Corp. v. Cryo–Maid, Inc.*, Del.Supr., 198 A.2d 681, 684 (1964).

11. ARIAD Reply Br. at 20. In its Opening Brief, ARIAD inconsistently argues that "When courts do not impose upon parties seeking a dismissal or stay the significant burden of proving inconvenience and hardship...[citing *supra* note 9, and *Texas Instruments, Inc. v. Cyrix Corp.*, Del. Ch., C.A. No. 13288, Mem. Op. at 1, 1994 WL 96983, Ja-

cobs, V.C. (Mar. 22, 1994)—cases where the two actions were simultaneously filed], the line between the two analyses disappears and the *forum non conveniens* analysis essentially becomes a *McWane* analysis." ARIAD Op. Br. at 22. No authority is cited for this effort to conflate the *McWane* and *Cryo–Maid* analyses, nor is any logical argument advanced to support it. Accordingly, the Court rejects this argument and regards the position advanced in ARIAD's Reply Brief as its true position.

12. The word "fraud" surfaces frequently in ARIAD's brief. ARIAD's efforts to elevate HFTP's conduct to the level of fraud appear to be hyperbolic.

affidavits setting forth its respective version of what the other side's representatives did (and did not) say during the negotiations over HFTP's notice of conversion. I find that those affidavits create a factual dispute that cannot be resolved on this paper record. Accordingly, I decline to treat the New York action as first filed.

But, it does not necessarily follow that this Delaware action wins the "first filed" contest either. As this Court observed in *Texas Instruments, Inc.*:[13]

It is undisputed that Cyrix had prepared its Texas petition before [Texas Instruments ("TI")] filed this Delaware action...A standstill agreement terminated on Friday, December 10, 1993, and the following Monday each party promptly commenced suit in its chosen forum. Because Cyrix intended to file suit in all events, and because only five hours separated the filing of the two actions, Cyrix contends that this Court should treat the actions as simultaneously filed.

I agree. Involved here is a race to the courthouse. That TI won that race by five hours should not, without more, impose upon the defendant the significant burden of proving inconvenience and hardship which might result in the denial of a stay that would otherwise be granted.

That reasoning is also appropriate here—indeed, even more so as only 13 minutes separated the filing of the two actions. Because each side was preparing to sue the other in the forum of its choice, and because neither lawsuit was filed in reaction to the other, the policy underlying *McWane*—to prohibit the party seeking a stay from defeating the plaintiff's legitimate choice of forum—is not implicated. Accordingly, the two actions will be treated as if they had been simultaneously

filed—as indeed for all practical purposes they were.

## B. The Appropriate Standard

Given that ruling, the question becomes what showing must ARIAD make to prevail on its motion to stay a Delaware action in favor of an action filed simultaneously in a foreign jurisdiction. HFTP argues that the standard is that ARIAD must show "overwhelming hardship and inconvenience," citing *Ison v. E.I. Dupont de Nemours & Co., Inc.*[14] and *Chrysler First Business Credit Corp. v. 1500 Locust Ltd. Partnership.*[15] Those cases do prescribe that standard, but only in cases where the motion is one to *dismiss* a first-filed Delaware action on *forum non conveniens* grounds. Neither of those cited decisions, nor any other authority cited to the Court, applies that standard to a motion to *stay* such a Delaware action. Given the profound distinction between those two remedies, that is hardly surprising. A dismissal ends a lawsuit; a stay only puts it on hold. Therefore, the burden on a party seeking to dismiss a first-filed Delaware action is and should be onerous. But where (as here) the moving party seeks a stay rather than a dismissal, the "burden on the moving party is a lesser one."[16] HFTP's argument is misconceived and must be rejected.

ARIAD's position is that because neither action is "first filed," neither party's choice of forum is entitled to such deference as would result in a higher-than-normal burden of persuasion on the party seeking to stay the Delaware action. Thus, ARIAD argues, all it need show is that on balance the *forum non conveniens* factors preponderate in favor of granting a stay. I agree.

Although in several cases Delaware courts have found that two actions pending

13. *See supra* note 11.

14. Del.Supr., 729 A.2d 832, 837–38 (1999).

15. Del.Supr., 669 A.2d 104, 108 (1995).

16. *Life Assurance Co. Of Pennsylvania v. Associated Investors Int'l. Corp.*, Del. Ch., 312 A.2d 337, 340 (1973).

in different fora were simultaneously filed for purposes of a motion to stay,[17] the standard or burden of persuasion imposed upon the party seeking the stay in those circumstances was not explicitly articulated. In *Acierno,* however, the Delaware Supreme Court did determine—albeit implicitly—what that standard should be.[18] In that case New Castle County filed an action in this Court against Mr. Frank Acierno only minutes before Mr. Acierno filed an action against New Castle County, involving the same issues, in the United States District Court for the District of Delaware. This Court denied Acierno's motion to stay the Chancery action in favor of his federal action. On appeal the Supreme Court affirmed, holding that:

> "We find that the Court of Chancery properly considered the relevant factors in exercising its discretion to deny the stay. The trial court did *not* give any weight to the fact that the County's action technically was the first filed. Acierno was not required to prove hardship and inconvenience and the trial court gave no deference to the County's choice of forum. Rather, the Court of Chancery focused on the fact that the denial of a building permit is a distinctly local government issue. Given the narrow, state law issue presented, the trial court concluded that it would not be more convenient to litigate in the federal forum. The court also determined that it could provide prompt and full relief and that denial of the stay would not result in duplicative litigation because resolution of the state law issues in the state court would eliminate the need for those issues to be considered by the federal court.

The Court of Chancery's analysis properly considered those factors that would make disposition of the case "easy, expeditious, and inexpensive" as well as the applicability of Delaware law. Its conclusions were sound, and its discretionary ruling will not be disturbed." [19]

■ In my view, the quoted ruling means that where two lawsuits are simultaneously filed—one in a Delaware state court and the other in a different forum—the Delaware court should decide a motion to stay the Delaware action as a discretionary matter, without giving deference to either party's choice of forum. In balancing all of the relevant factors, the focus of the analysis should be which forum would be the more "easy, expeditious, and inexpensive" in which to litigate. That approach, which imposes no special or heightened burden of persuasion, leads straightforwardly to the following burden of persuasion: towards which of the two competing fora do the *forum non conveniens* factors preponderate? [20] That is the standard which will govern this motion.

## C. Towards What Forum Do The *Forum Non Conveniens* Factors Preponderate?

■ A decision to grant a motion to stay a Delaware action in favor of litigation pending in another forum is governed by well settled law. As our Supreme Court has stated, the Court should consider the following factors in *forum non conveniens* cases where there is no issue of *prior* pendency of the same action: (1) the relative ease of access to proof, (2) the availability of compulsory process for witnesses, (3) the possibility of a view of the premises, (4) whether the controversy is dependent upon the application of Dela-

---

**17.** *See e.g., supra* note 11; *Draper v. Paul N. Gardner Defined Plan Trust,* Del.Supr., 625 A.2d 859, 869, n. 15 (1993); *In re Chambers Development Co., Inc. Shareholders Litig.,* Del. Ch., C.A. No. 12508, Mem. Op. at 14, Chandler, V.C., 1993 WL 179335 (May 20, 1993).

**18.** *Supra* note 9.

**19.** *Id.* at 458 (emphasis in original).

**20.** That was, in fact, the approach followed by Vice Chancellor Steele in denying the motion to stay. *New Castle County v. Acierno,* Del. Ch., C.A. No. 13302, Let. Op. at 1, Steele, V.C., 1995 WL 694426 (Oct. 19, 1995).

ware law which the courts of this State more properly should decide than those of another jurisdiction, (5) the pendency or nonpendency of a similar action or actions in another jurisdiction, and (6) all other practical problems that would make the trial of the case easy, expeditious, and inexpensive.[21]

These factors are now addressed.

### 1. Relative Ease of Access to Proof

 Because ARIAD has its principal place of business in Massachusetts, it will bear some marginal inconvenience in producing documents in either New York or Delaware. ARIAD has not shown that from a document production standpoint, Delaware would be materially more convenient than New York. As Vice Chancellor Steele aptly observed, "[m]odern methods of information transfer render concerns about transmission of documents virtually irrelevant."[22] Accordingly, this factor is neutral—it neither favors nor disfavors either forum.

### 2. Availability of Compulsory Process for Witnesses

Although HFTP's (and Promethean's) witnesses are located in New York, HFTP has represented that it will voluntarily produce them in Delaware, if necessary. Accordingly, this aspect of the problem disappears.

The remaining aspect—ARIAD's witnesses—falls into two categories: witnesses located in Massachusetts and witnesses located in New York. (Apparently, none of ARIAD's witnesses are located in Delaware.) Those witnesses who are located in Massachusetts would not be subject to compulsory process in either New York or Delaware. That leaves ARIAD's New York-located witnesses, who ARIAD describes as "[r]elevant third parties— such as brokers, stock trading specialists and expert witnesses..."[23] To the extent these third parties are expert witnesses, it must be presumed that they would be paid by ARIAD and consequently, are under ARIAD's control and would appear in either Delaware or New York at ARIAD's request. To the extent that these persons are fact witnesses, their testimony could be obtained by deposition. For these reasons, the unavailability of process to compel the live testimony of those witnesses in Delaware renders this factor (and any inconvenience resulting therefrom) of little significance.[24] Accordingly, if this factor favors any jurisdiction it would be New York, but only slightly.

### 3. Possibility of A View of the Premises

The parties agree that this factor is irrelevant and can be disregarded in the analysis.

### 4. The Applicability of Delaware Law

ARIAD's Certificate of Designations, which is governed by Delaware law, is at the core of HFTP's claims and certain of ARIAD's defenses in this action. ARIAD's remaining defenses in this action, and its state law defenses in the New York action, are predicated upon the Purchase Agreement, which is governed by New

---

21. *Supra* note 15 (citing *Cryo–Maid*, 198 A.2d at 684).

22. *Asten v. Wangner*, Del. Ch., C.A. No. 15617, Let. Op. at 1, Steele, V.C., 1997 WL 634330 (Oct. 3, 1997). Although HFTC is located in New York, this factor focuses on hardship to ARIAD, which does not claim that the location of HFTP's document production legitimately would affect ARIAD at all.

23. ARIAD Reply Br. at 25.

24. *See e.g., Kane v. Peugeot Motors of America, Inc.*, Del.Super., C.A. No. 95–C–10–259–WTQ, Quillen, J., 1995 WL 945817 (Dec. 19, 1995) ("[ t]he significance of this factor has surely lessened over the years"); *USH Ventures v. Global Telesystems Group, Inc.*, Del.Super., C.A. No. 97–C–08–086–WTQ, Quillen, J., 1998 WL 281250 (May 21, 1998) ("[t]he testimony of any witnesses who are unavailable for trial could be taken by way of deposition.").

York law. This Court and the Southern District are both competent to decide the Delaware and New York state law issues,[25] but in this case a significant part of the controversy depends upon the application of Delaware law that the courts of this state more properly should decide. Delaware has a strong interest in protecting the contractual rights of investors in corporations formed under its General Corporation Law. For that reason, Delaware courts are willing to hear, on an expedited basis, claims by preferred shareholders for equitable relief on the ground that those investors are being wrongfully deprived of their contractual right to convert their shares into common stock.[26] Indeed, it is ironic that ARIAD, despite having voluntarily chosen to incorporate in Delaware, proclaims that it is inconvenient for a Delaware court to determine ARIAD's obligations to its preferred stockholders.

I conclude that this factor weighs strongly in favor of the Delaware forum.

## 5. Pendency of A Similar Action In Another Jurisdiction

ARIAD contends that this factor—the pendency of its New York action—is the most important consideration; indeed, it is this factor upon which ARIAD most heavily relies. ARIAD argues that the New York action involves the same parties (plus Promethean) as this action and that it incorporates all the state law claims and defenses being asserted by both sides, plus the Exchange Act claims that are not—

because they cannot be—raised in this lawsuit. This factor, ARIAD urges, merits significant weight because (i) it makes no sense to litigate claims involving the same subject matter in two courts, and only one court—the Southern District—is capable of adjudicating *all* of the parties' claims and defenses; and (ii) even if this lawsuit were allowed to go forward and HFTP were to prevail, any judgment of this Court in favor of HFTP could later be nullified by a decision in the New York action favorable to ARIAD, specifically, by a determination that ARIAD is entitled to rescind the Purchase Agreement by reason of HFTP's wrongful misrepresentations in violation of the Exchange Act.

The first part of this argument has persuasive force. As a general matter, and all else being equal, it is sensible that the court which has before it all the claims arising out of a particular constellation of facts should be the forum that adjudicates those claims. Moreover, the Southern District—a highly distinguished court with a tradition of adjudicating securities and commercial matters—is unquestionably competent to do that. But those propositions, however unarguable they may be in the abstract, do not determine the weight this factor should be accorded in this specific case, because other variables are implicated. If (for example) the parties' overall dispute were one that could not be resolved without adjudicating the federal claims over which this Court lacks subject matter jurisdiction, that would justify ac-

25. ARIAD's federal law "defenses" are before the Southern District in the form of affirmative claims for declaratory and rescission relief under the Exchange Act. Only the Southern District is empowered to adjudicate those federal claims, because the Exchange Act vests the federal courts with exclusive jurisdiction over claims to enforce rights arising under that statute.

26. *See Halifax Fund, L.P. v. Response USA, Inc.,* Del. Ch., C.A. No. 15553, Jacobs, V.C. (May 13, 1997) (specifically enforcing a contractual right to convert preferred stock, and rejecting, *inter alia,* the defense that purchas-

ers of the convertible preferred had given assurances that they would be long term investors). In July of this year, the General Assembly amended the Delaware General Corporation Law to add a new 8 *Del. C.* § 111, which provides:

*§ 111 Interpretation and Enforcement of the Certificate of Incorporation or the By-Laws*

"Any action to interpret, apply, or enforce the provisions of the certificate of incorporation or the by-laws of a corporation may be brought in the Court of Chancery." [72 Del. Laws, C. 123 (July 2, 1999) ].

cording this factor heavy, if not dispositive, weight. But here, ARIAD's federal claims are cumulative, not essential. Here, an adjudication of the state law contract claims and defenses presented in this action would resolve the dispute, independent of the federal claims being asserted in the New York action. Those federal claims are but one additional ground upon which a court could deny relief to HFTP, but they are not an indispensable ground.

If ARIAD's defenses were to prevail in this action, that would likely moot its federal claims for rescission in the New York action,[27] because ARIAD's Delaware defenses involve the same issues as the claims it asserts in the New York action, and both sets of claims and defenses arise out of the same set of facts. By the same token, if this Court were to reject ARIAD's defense of fraudulent inducement, that adverse determination would have collateral estoppel effect with respect to ARIAD's claim for rescission in the New York action. Accordingly, this *forum non conveniens* factor does not merit the significant weight that ARIAD insists it should have.

ARIAD contends, however, that this factor should be given dispositive weight for a second reason: if the Southern District were to validate ARIAD's Exchange Act claims, that could entitle ARIAD to rescind the sale of its stock to HFTP even if this Court were to reject ARIAD's defenses. The short answer is that on this record, that contention is little more than *ipse dixit*. At oral argument counsel for ARIAD was unable to cite any federal decision where a federal court nullified, on federal securities grounds, a judgment of a state court enforcing a stockholder's right to convert its convertible preferred stock. Nor does ARIAD explain precisely how that scenario might occur, particularly where the state court makes factual determinations that are adverse to the corpora-

tion asserting federal securities claims predicated on those same facts.

For the foregoing reasons this factor, upon which ARIAD relies so heavily, does not merit the significant (indeed, dispositive) weight that ARIAD so vociferously advocates. This factor is neutral, or at best (from ARIAD's standpoint), tilts only slightly in favor of the New York forum.

### 6. All Other Practical Problems That Would Make A Trial Of The Case Easy, Expeditious, and Inexpensive

This factor implicates two elements. The first is that any resolution of the New York action will very likely be delayed, because (i) that court must first decide HFTP's pending motion to dismiss the federal complaint for failure to state legally cognizable claims under the Exchange Act, and (ii) ARIAD has not (as far as this record discloses) made any effort to expedite the proceedings in that forum. The second consideration is that this action is on an expedited track and will be tried on the merits in late January 2000. Accordingly, the resolution of this dispute will be far more prompt in this forum than in the New York action. For these reasons, this factor favors the Delaware forum and militates against granting a stay.

### 7. Balancing The Factors

To summarize the preceding analysis: (1) two of the *forum non conveniens* factors ( the availability of compulsory process for witnesses and pendency of other actions) favor granting a stay of this action, but only slightly, (2) two of those factors (the applicability of Delaware law and other practical considerations) weigh heavily against granting a stay, and (3) the remaining factors are either neutral or irrelevant. Balancing these factors as thus weighted, I conclude, in the exercise of discretion, that the *forum non conve-*

---

**27.** To the extent ARIAD seeks money damage relief based on its federal securities claims, any decision by this Court in its favor would not prejudice ARIAD's damages claim.

*niens* factors preponderate against granting a stay.

## IV. CONCLUSION

For the foregoing reasons ARIAD's motion to stay is denied. **IT IS SO OR-DERED.**