**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: January 6, 2021
Date Decided: February 10, 2021

Bradley R. Aronstam, Esquire
Roger S. Stronach, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

James G. McMillan, III, Esquire
Theodore A. Kittila, Esquire
Halloran Farkas + Kittila LLP
5801 Kennett Pike, Suite C/D
Wilmington, DE 19807

Re: *AG Resource Holdings, LLC, et al. v. Thomas Bradford Terral*
C.A. No. 2020-0850-JRS

Dear Counsel:

This is a breach of contract action where Plaintiff, AG Resource Holdings, LLC, seeks specific performance and damages following Defendant, Thomas Bradford Terral's alleged breaches of limited liability operating agreements and an employment agreement. Terral has moved to dismiss or stay this action under Chancery Rule 12(b)(3) in favor of first-filed litigation in Louisiana. Alternatively, he seeks dismissal for failure to state viable claims under Chancery Rule 12(b)(6). For the reasons explained below, Counts II and III of the Complaint will be stayed

to allow the unfettered adjudication of the identical claims pending in Louisiana, but otherwise the Motion to Dismiss or Stay is denied.

## I.  FACTUAL BACKGROUND

Defendant, Terral, co-founded AG Resource Management, LLC ("ARM LA"), an agricultural lending business, in 2009.[1]  In 2015, Terral initiated a multi-step restructuring of his business.  In the first step, he sold a majority of his interest in ARM LA to a private equity firm, Virgo Tigers LLC ("Virgo").[2]  He then caused ARM LA's assets to be transferred to a Delaware operating company, AG Resource Management, LLC ("AG Management").  Terral and Virgo then formed Plaintiff AG Resource Holdings, LLC ("AG Holdings")—also a Delaware limited liability company—to own and manage AG Management.  They also formed Plaintiff, Agrifund, LLC, an affiliated Delaware entity (together with

---

[1] Compl. ¶ 14.  For purposes of Terral's motion to dismiss under Chancery Rule 12(b)(6), the Court accepts as true all well-pled facts in the Complaint and draws all reasonable inferences in favor of Plaintiffs.  *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[2] Compl. ¶ 16.

AG Management and AG Holdings, the "Company").[3]  Finally, in 2016, Terral and Virgo solicited another investment, this time by Nutrien Ag Solutions, Inc., ("Nutrien").

The restructuring was ultimately memorialized in two operating agreements: the AG Resource LLC Agreement and the Agrifund LLC Agreement (the "LLC Agreements").[4]  And Terral's ongoing role at the Company was defined in an Employment Agreement dated September 9, 2015 (the "Employment Agreement").[5]

The LLC Agreements and the Employment Agreement contain several provisions that govern Terral's conduct within the Company.  *First*, the LLC Agreements contain a "good faith" clause at Section 6.4.2, requiring the Company's managers, including Terral, to act "in good faith and within the scope of

---

[3] Compl. ¶¶ 7, 17–18.

[4] Compl. ¶¶ 7, 18.

[5] Compl. ¶ 8.

[the manager's] authority."[6] *Second*, at Section 7.4, the LLC Agreements set forth non-competition covenants preventing members from competing with the Company or engaging in business with competitors of the Company.[7] *Third*, the Employment Agreement, at Sections 7(a)–(e), lays out its own set of restrictive covenants, including a non-competition provision, a non-solicitation provision, a non-disparagement provision, a non-interference provision and an agreement not to share confidential information, as defined in the agreement.[8] *Finally*, the LLC Agreements contain both a Delaware choice of law and a Delaware choice of forum provision at Section 11.6, while the Employment Agreement likewise contains a Delaware choice of law provision at Section 11, but no choice of forum provision.

On September 9, 2020, the Company terminated Terral from all positions within the Company after discovering he was secretly planning either to compete

---

[6] Compl. Ex. 1–2 ("LLC Agreements") at § 6.4.2.

[7] LLC Agreements at § 7.4.

[8] Compl. Ex. 3 ("Employment Agreement") at §§ 7(a)–(e).

directly with the Company or otherwise "steal Plaintiffs' business."[9] The termination was "for cause," meaning, *inter alia*, Plaintiffs have rights to repurchase from Terral certain incentive units under various equity agreements between Terral and the Company.[10]

## II. PROCEDURAL HISTORY

On August 26, 2020, Terral filed a complaint against the Company in the 5th Judicial District Court for the Parish of Richland, Louisiana (the "Louisiana court") seeking declarations that the non-competition covenant in his Employment Agreement is unenforceable, the Delaware choice of law provision in the Employment Agreement is null and void under Louisiana law and the Company did not have cause to terminate him (the "Louisiana Action").[11] The complaint in the Louisiana Action was served on the Company on September 28, 2020. Four days later, on October 2, 2020, Plaintiffs, AG Holdings

---

[9] Compl. ¶¶ 2–4, 64.

[10] Compl. ¶¶ 65–66.

[11] Def.'s Opening Br. in Supp. of Mot. to Dismiss or Stay Pls.' Verified Compl. ("OB") D.I. 36, Ex. B ("Louisiana Complaint").

and Agrifund, filed this action seeking three remedies: (a) specific performance of the LLC Agreements and Employment Agreement, including the choice of law and non-competition provisions in the Employment Agreement; (b) an injunction to prevent Terral from further breaching those agreements; and (c) damages for Terral's breach of contract.[12]

On November 5, 2020, the Court granted Plaintiffs' Motion to Expedite.[13] Two weeks later, the Court entered a status quo order governing Terral's actions during the pendency of this litigation.[14] Meanwhile, on November 13, the Louisiana court heard oral argument on Terral's motion for a preliminary injunction to prevent the Company from enforcing the Employment Agreement's non-compete covenant and, on November 20, the parties completed briefing on the Company's motion to

---

[12] Specifically, Count I of the Delaware Complaint alleges Breach of the LLC Agreement; Count II alleges Breach of the Employment Agreement; and Count III seeks a Declaration that Terral's conduct justified his termination "for cause" under the Employment Agreement.

[13] D.I. 39.

[14] D.I. 37.

stay the Louisiana Action in favor of this action.[15]  On December 21, the Louisiana court issued its ruling, denying the Company's motion to stay and granting Terral's motion for preliminary injunction.[16]  In its ruling, the Louisiana court determined that the Employment Agreement's Delaware choice of law provision was null and void and its non-competition covenant was unenforceable for failure to comport with Louisiana's statutory restrictions on such covenants.[17]

### III.  ANALYSIS

Terral seeks a stay or dismissal of the Complaint under Chancery Rule 12(b)(3) for improper venue and dismissal under Chancery Rule 12(b)(6) for failure to state a viable claim.  I address the arguments in turn.

---

[15] OB at 6.

[16] D.I. 48.

[17] *Id.*

**A. *Forum Non Conveniens***

Under Chancery Rule 12(b)(3), this court may dismiss or stay an action upon concluding that Delaware is an inappropriate forum to adjudicate the action.[18] The standard by which the court will address a forum challenge depends upon whether the Delaware action is first-filed or later filed in relation to actions regarding the same or similar dispute(s) filed elsewhere. If the Delaware action is first-filed, the court applies a standard, the so-called *Cryo-Maid* standard, that gives due deference to the plaintiff's choice of forum.[19] If the Delaware action follows the filing of a similar action elsewhere, the court applies the discretionary *McWane* standard that allows the court to defer more readily to the court in which related litigation was first filed.[20] If actions in and outside of Delaware are filed

---

[18] *Lefkowitz v. HWF Hldgs., LLC*, 2009 WL 3806299, at *3 (Del. Ch. Nov. 13, 2009) ("Courts traditionally dismiss a matter under Rule 12(b)(3) when the contract underlying the dispute contains an explicit forum selection clause or when, applying the doctrine of *forum non conveniens*, Delaware is clearly not the appropriate forum for litigation.").

[19] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964).

[20] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970).

simultaneously, the court will engage in a traditional *forum non conveniens* analysis by applying the factors set forth in *Cryo-Maid*.[21] In other words, in the case of simultaneous filings, "the court may place less emphasis on filing priority and determine by a preponderance of the evidence whether litigating in one forum or the other would be easier, more expeditious, and less expensive."[22]

When determining whether an action filed first in time but in close temporal proximity to another action should be given first-filed deference, or instead be treated as simultaneously filed, the court "takes into account the circumstances surrounding the filing of the actions."[23] "Ultimately, the exercise of the court's discretion will depend upon review of the relevant practical considerations keeping in mind the broader policies of comity between the states and their courts and the

---

[21] *HFTP Invs., L.L.C. v. ARIAD Pharms., Inc.*, 752 A.2d 115, 121–23 (Del. Ch. 1999).

[22] *Focus Fin. P'rs, LLC v. Holsopple*, 2020 WL 6390038, at *7 (Del. Ch. Nov. 2, 2020) ("*Holsopple II*"); *HFTP Invs.*, 752 A.2d at 122 (clarifying that the *forum non conveniens* standard when two actions are simultaneously filed asks: "towards which of the two competing fora do the *forum non conveniens* factors preponderate?").

[23] *Lima Delta Co. v. Glob. Aerospace, Inc.*, 2016 WL 691965, at *4 (Del. Super. Ct. Feb. 19, 2016) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Turner Constr. Co.*, 2014 WL 703808, at *2 (Del. Super. Ct. Feb. 17, 2014)).

orderly and efficient administration of justice."[24]  Here, the Louisiana Action was filed earlier in the same week the Delaware action was filed, merely four days apart. The temporal proximity of the filings and the mirror-image nature of the requests for relief suggest the parties were in a race to file in the courthouses of their choice. Under these circumstances, it is appropriate to afford neither party first-filer status.[25]

Having determined that the Louisiana and Delaware actions should be deemed simultaneously filed, I turn to the *Cryo-Maid* factors to address Terral's forum challenge.  They are:

---

[24] *Adirondack GP, Inc. v. Am. Power Corp.*, 1996 WL 684376, at *6 (Del. Ch. Nov. 13, 1996).

[25] *See Nat'l Union Fire Ins.*, 2014 WL 703808, at *3 ("The Court may consider if the suit was filed in anticipation of litigation when determining if deference is applicable.  The anticipatory use of a declaratory judgment action 'for the purpose of gaining an affirmative judgment in a favorable forum requires a closer look at the deference historically accorded a prior filed action.'" (quoting *Playtex, Inc. v. Columbia Cas. Co.*, 1989 WL 40913, at *4 (Del. Super. Ct. Apr. 25, 1989)); *Williams Gas Supply Co. v. Apache Corp.*, 1991 WL 18091, at *2 (Del. Super. Ct. Feb. 12, 1991) ("Delaware courts have recognized that the use of a declaratory judgment action to anticipate and soften the impact of an imminent suit elsewhere for the purpose of gaining an affirmative judgment in a favorable forum requires a closer look at the deference historically accorded a prior filed action." (citing *Playtex*, 1989 WL 40913, at *4)); *Air Prods. & Chems., Inc. v. Lummus Co.*, 252 A.2d 545, 547–48 (Del. Ch. 1968), *rev'd on other grounds*, 252 A.2d 543 (Del. 1969)).

(1) the existence of other litigation involving substantially similar parties or subject matter;

(2) whether the controversy depends upon a question of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(3) the relative ease of access to proof;

(4) the availability of compulsory process for witnesses; and

(5) any other matters that would affect the conduct of the litigation and the expeditious and economic administration of justice. [26]

With these factors in mind, I am satisfied the Company's claims against Terral under the Employment Agreement must be stayed pending resolution of the identical claims in the Louisiana Action. The Louisiana court has already determined that the non-compete covenant in the Employment Agreement likely violates Louisiana statutory law, and has further determined that the Employment Agreement's Delaware choice of law provision is null and void to the extent the Company would enforce the provision to deny Terral his rights under the applicable Louisiana statutes. This weighs strongly in favor of staying the similar claims in Delaware to

---

[26] *Holsopple II*, 2020 WL 6390038, at *6.

allow the Louisiana court to complete its adjudication of the claims under the Employment Agreement without the risk of competing or confounding rulings from Delaware.[27] The claims arising under the LLC Agreements, on the other hand, present issues of internal governance and fiduciary conduct within Delaware entities. They are not subject to Louisiana statutory law and the Company has every right to litigate those claims in its choice of forum.

### 1. The Claims under the Employment Agreement

The parties dispute whether Delaware or Louisiana law should apply to the Company's claim that Terral breached his Employment Agreement. Before turning to the merits of the choice of law dispute, it is appropriate first to consider whether

---

[27] *Id.* at *8 (noting that an "important consideration [under *Cryo-Maid*] is the degree to which one jurisdiction or the other has engaged with the case and expended judicial resources"); *see also id.* ("If a judge in one forum has invested actual, substantive effort in a case, a competing forum should consider carefully whether one of its judges should make a similar case-specific investment.") (quoting *Hamilton P'rs, L.P. v. Englard*, 11 A.3d 1180, 1217 (Del. Ch. 2010)); *Brookstone P'rs Acq. XVI, LLC v. Tanus*, 2012 WL 5868902, at *7 (Del. Ch. Nov. 20, 2012) (observing that if the Texas and Delaware actions proceeded simultaneously, then the parties would be forced to engage in "piecemeal litigation" and "duplicative efforts," which would risk "inconsistent judgments" from the courts); *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *17 (Del. Ch. July 14, 2008) (taking into account the duplication of effort and the risk of inconsistent judgments in the *forum non conveniens* analysis).

an actual conflict exists as between the two states' laws.[28] In the case of a "false conflict," where the laws of the competing jurisdictions are in accord, the court need not conduct a choice of law analysis and may, instead, apply Delaware law.[29] As discussed below, no such "false conflict" exists here; Louisiana and Delaware law are miles apart on the subject of covenants not to compete.

When employers and employees within Louisiana designate a choice of law other than Louisiana law in their employment contract, Louisiana will enforce the choice only in instances where the breaching party ratifies the provision after the alleged wrongful conduct.[30] No such restriction exists in Delaware, where our courts presume that parties to a contract specifying a choice of law meant what they said when they said it.[31] Similarly, Louisiana law permits non-compete covenants only

---

[28] *Focus Fin. P'rs, LLC v. Holsopple*, 241 A.3d 784, 814 (Del. Ch. 2020) ("*Holsopple I*") ("The next step in the choice-of-law analysis is to determine if there is an actual conflict between the laws of the different states that each party urges should apply." (internal quotations omitted)).

[29] *Id.* at 815.

[30] LA. STAT. ANN. § 23:921(A)(2) (2020).

[31] *Swipe Acq. Corp. v. Krauss*, 2021 WL 282642, at *2 (Del. Ch. Jan. 28, 2021).

to the extent they are geographically limited to a single parish and temporally limited to two years.[32] Again, Delaware law recognizes no such rigid restrictions.[33]

Having determined that an actual conflict of law exists, the court next considers the impact of any contractual choice of law. As noted, the parties to the Employment Agreement expressly chose Delaware law. Accordingly,

> the choice of law analysis . . . involves three questions: (1) whether "absent the contractual agreement of the parties to import Delaware law, [Louisiana] law would apply[,]" (2) "whether the enforcement of the covenant would conflict with a 'fundamental policy' of [Louisiana's] law" and (3) "whether [Louisiana] has a materially greater interest in the issues—enforcement (or not) of the contract at hand—than Delaware."[34]

---

[32] LA. STAT. ANN. § 23.921(C) (2020).

[33] *FP UC Hldgs., LLC v. Hamilton*, 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020) (observing that Delaware courts, as a matter of common law, will generally consider the following when determining whether a non-compete covenant is enforceable: "(1) [is the covenant] reasonable in geographic scope and temporal duration, (2) [does it] advance a legitimate economic interest of the party seeking its enforcement, and (3) [does it] survive a balancing of the equities").

[34] *FP UC Hldgs.*, 2020 WL 1492783, at *8 (quoting *Ascension Ins. Hldgs., LLC v. Underwood*, 2015 WL 356002, at *6–8 (Del. Ch. Jan. 28, 2015)).

These well-established principles are drawn from two sections of the Restatement (Second) of Conflict of Laws—Sections 187 and 188.[35]  If these narrow "questions are answered in the affirmative, [Louisiana] law will apply notwithstanding the choice of law provision."[36]

Here, it is clear that absent the Employment Agreement's choice of law provision selecting Delaware law, Louisiana law would control claims related to Terral's status as employee.  At the outset, I note the Company concedes this point by acknowledging in its brief, "[s]olely for the sake of argument, Plaintiffs accept the premise, implicit in Terral's Motion, that Louisiana law would govern but for the agreements' Delaware choice of law provisions."[37]  The concession is well placed, as there is little doubt Louisiana has the most significant relationship to the

---

[35] RESTATEMENT (SECOND) OF CONFLICT OF LAWS ("Restatement") §§ 187–88 (2019).

[36] *FP UC Hldgs.*, 2020 WL 1492783, at *8; *see also Ascension*, 2015 WL 356002, at *2 ("[W]here the parties enter a contract which, absent a choice-of-law provision, would be governed by the law of a particular state (which I will call the "default state"), and the default state has a public policy under which a contractual provision would be limited or void, the Restatement recognizes that allowing the parties to contract around that public policy would be unwholesome exercise of freedom of contract.").

[37] Pls.' Answering Br. in Opp. to Def.'s Mot. to Dismiss or Stay ("AB") D.I. 44 at 35 n.10.

transaction and the parties as relates to claims under the Employment Agreement.[38] In this regard, the court considers several factors, including: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties."[39] Terral is a resident of Louisiana; the Employment Agreement was executed in Louisiana; and Terral performed his work for the Company primarily from his office in Louisiana.[40] Louisiana, therefore, has the most significant relationship to claims arising under the Employment Agreement.

---

[38] *See FP UC Hldgs.*, 2020 WL 1492783, at *9.

[39] *Id.* The court typically considers other factors in this analysis, but given the concession made by the Company, I need not fully address them at this juncture. *See id.* ("In addition, when engaging in the most significant relationship analysis, our courts also consider the factors laid out in Section 6 of the Restatement, which are: (1) the needs of the interstate and international systems, (2) the relevant policies of the forum, (3) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) certainty, predictability and uniformity of result and (7) ease in the determination and application of the law to be applied.").

[40] OB, Ex. B ¶ 20.

Louisiana also maintains a more compelling public policy interest in ensuring its laws are enforced with respect to the employment rights of its citizens working within the state. In this regard, Louisiana statutes apply to both the choice of law provision and the non-compete covenant within the Employment Agreement. Indeed, as noted, the Louisiana court has already determined that both provisions violate Louisiana law.[41] LA. STAT. ANN. § 23:921(A)(2) provides that choice of law and forum selection clauses in employment agreements are unenforceable except where the employee ratifies the provision "after the occurrence of the incident which is the subject of the civil or administrative action." Additionally, LA. STAT. ANN. § 23.921(C) governs the enforcement of non-competition provisions, prohibiting them in employment contracts unless they specify a particular parish within Louisiana to which the restriction(s) apply and are cabined to two years.

---

[41] This is similar to *FP UC Hldgs.* in that, there, the Alabama court had already held the non-compete was unenforceable under Alabama law. *FP UC Hldgs.,* 2020 WL 1492783, at *10 ("That the Alabama Court has already stated it would void the Grant Agreement's non-compete is powerful evidence to that effect.").

When compared to Louisiana's interests, Delaware's contractarian policy interests clearly must yield. In *Holsopple II*, this court noted "a sister state's policy interest in adopting specific legislation to govern a particular substantive area, such as employment, must necessarily trump a generalized interest in freedom of contract."[42] The Louisiana laws cited above are clear pronouncements by the Louisiana legislature regarding its public policy on matters of employment and competition. Under the circumstances, Louisiana's interests must be respected and enforced.[43]

Given the force of the preference for Louisiana as dictated by *Cryo-Maid*'s first two factors, I need not dwell on the others. Suffice it to say, the ease of access to proof, the availability of compulsory process, and the broad "other matters" factors do not push the needle toward either Louisiana or Delaware.[44]

---

[42] *Holsopple II*, 2020 WL 6390038, at *12.

[43] *Id.* at *17.

[44] *Id.* at *26–27.

Based on the foregoing, I am satisfied the Louisiana court is best suited to address the claims under the Employment Agreement and that a stay of these claims in Delaware is appropriate. I say stay rather than dismissal because, to the extent the issues are not fully resolved by the Louisiana court, the parties may return to Delaware for complete resolution.

### 2. The Claims under the LLC Agreements

The claims arising under the LLC Agreements present a different story. Those claims are not before the Louisiana court. Specifically, the Louisiana court is not considering whether Terral breached his contractual duty of good faith under the LLC Agreements when disclosing information to competitors, disparaging Company representatives or attempting to compete.

Contrary to the claims arising under the Employment Agreement, there is no reason under either Louisiana or Delaware law to deny the Company its right to enforce the LLC Agreement's Delaware choice of law and choice of forum provisions. Even without those provisions, absent an expression to the contrary in the documents themselves, Delaware law most certainly would apply to claims

arising under the constitutive documents of a Delaware entity.[45]  Moreover, while Louisiana may possess a public policy interest in regulating the actions of employers toward employees within that state, Louisiana has no interest in regulating the governance or internal affairs of a Delaware entity.  And, while LA. STAT. ANN. § 23:921(L) provides that, under Louisiana law, non-competes within LLC agreements will be subject to nearly identical restrictions as those within employment contracts,[46] there is no indication that Louisiana purports to extend those restriction to fiduciaries acting within Delaware LLCs.[47]

---

[45] *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 168 (Del. Ch. 2010).

[46] LA. STAT. ANN. § 23:921(L) (2020).

[47] To state the distinction most directly, the claims under the Employment Agreement rest on Terral's conduct as employee (regardless of whether he occupied a fiduciary status), while the claims under the LLC Agreement rest on Terral's status as a member of the Company's Board of Managers.  Compl. ¶ 26.  In drawing this distinction, I acknowledge there may be some overlap in the litigation and adjudication of claims arising under the Employment Agreement on the one hand, and the LLC Agreements on the other, and further acknowledge there is at least some risk of inconsistent outcomes.  Nevertheless, as discussed here, Terral is alleged to have engaged in wrongful conduct as a "manager" and "officer" of a Delaware entity.  Compl. ¶ 72.  The Company is entitled to litigate that claim in this Court.

On the other hand, Delaware maintains a "significant and substantial interest in overseeing the conduct of [Delaware] corporate fiduciaries."[48]  In this regard, determining whether Terral acted in good faith, in line with his contractual fiduciary duties, is quintessentially an internal affairs question, creating an "obligation [for this court] to provide . . . a forum."[49]

## B. The Rule 12(b)(6) Analysis

The standard for deciding a motion to dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[50]

---

[48] *Hamilton P'rs*, 11 A.3d at 1213; *Holsopple II*, 2020 WL 6390038, at *9 ("[I]f the question of Delaware law involves the internal affairs of a Delaware entity, then this *Cryo-Maid* factor will weigh heavily in favor of the plaintiff's choice of forum.").

[49] *Sternberg v. O'Neil*, 550 A.2d 1105, 1125 (Del. 1988), *abrogated on other grounds by Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016).

[50] *Savor, Inc.*, 812 A.2d at 896–97 (footnotes and internal quotations omitted).

Section 6.4.2 of the LLC Agreements dictates that the Company's managers, including Terral, act "in good faith and within the scope of [the manager's] authority."[51] This contractual good faith standard includes an obligation on Terral's part to refrain from taking actions involving "bad faith, gross negligence, willful misconduct, or actual fraud."[52] With this standard as the backdrop, the Complaint more than adequately states a claim that Terral's consistent distribution of Company confidential information to competitors and disparagement of management, among other things, constituted bad faith for which the members can hold him liable. Indeed, the issue of Terral's alleged bad faith presents a "factual question that is inappropriate for resolution on a Rule 12(b)(6) motion to dismiss."[53]

The Complaint alleges that Terral, without authorization, provided confidential information regarding the state of the Company's business to a number

---

[51] LLC Agreements at § 6.4.2.

[52] *Id.*

[53] *Work Cap., LLC v. AlphaOne Cap. P'rs, LLC*, 2020 WL 3475887, at *4 (Del. Super. Ct. June 25, 2020); *Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 83 A.3d 731, 732 (Del. 2013) (same).

of entities, primarily competitors, including CGB Enterprises, Inc. and International

Farming Corporation, in a manner that "intentionally subvert[ed] [the Company's]

business."[54]   The Complaint also well pleads that Terral recruited Company

employees to engage in unauthorized acts and intentionally interfered with the

Company's customer relationships.[55]   And, through presentations of distorted

confidential information to and other communications with Nutrien designees to the

Company Board, Terral disparaged certain Board members, suggesting these

members had engaged in conduct that was "highly destructive" to the Company.[56]

The repetitive nature of these unauthorized actions, as alleged, makes it

reasonably conceivable that Terral's conduct was intentional and willful, in violation

of the standard of conduct embodied within the LLC Agreements.[57]   In other words,

---

[54] Compl. ¶¶ 3, 43, 46, 47, 55, 56.

[55] Compl. ¶¶ 2, 39, 41, 85.

[56] Compl. ¶ 54.

[57] *Armwood v. Penco Corp.*, 1997 WL 720461, at *3 (Del. Super. Ct. Sept. 29, 1997) ("Courts have found wilful or wanton conduct in many contexts; important to this case, however, is that context in which courts have found wilful or wanton conduct in

taking all of the factual allegations in the Complaint as true, Terral's actions in the course of his time as Chief Operating Officer of the Company allow a reasonable inference that he acted in bad faith amounting to willful misconduct, in breach of Section 6.4.2 of the LLC Agreements.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is DENIED as to all Counts, but the Motion to Stay is GRANTED as to Counts II and III, as both assert claims arising under the Employment Agreement that are properly before the court in Louisiana.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

---

employee's repeated violations of company policy, despite receiving warnings regarding his misconduct.").