**Dr. Henry T. NICHOLAS, III, William J. Ruehle, and Dr. Henry Samueli, Plaintiffs Below, Appellants,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Twin City Fire Insurance Company, XL Specialty Insurance Company, Arch Insurance Company, and Federal Insurance Company, Defendants Below, Appellees.**

**No. 209, 2013.**

Supreme Court of Delaware.

Submitted: Nov. 13, 2013.
Decided: Dec. 20, 2013.

Jennifer C. Wasson, Esquire and Michael B. Rush, Esquire, Potter, Anderson & Corroon, LLP, Wilmington, Delaware, Scott D. Gilbert, Esquire, Miriam M. Smolen, Esquire (argued), Ivan J. Snyder, Esquire and Emily P. Grim, Esquire, Gilbert LLP, Washington, DC, for appellants.

Edward M. McNally, Esquire and Patricia A. Winston, Esquire, Morris James LLP, Wilmington, Delaware and Robert Novack, Esquire, Bressler, Amery & Ross, P.C., New Jersey, for appellee, National Union Fire Insurance Company of Pittsburgh, PA.

John D. Balaguer, Esquire, Christian J. Singewald, Esquire, and Timothy S. Martin, Esquire, White and Williams LLP, Wilmington, Delaware, and Jay Shapiro, Esquire (argued), White and Williams LLP, New York, New York, for appellee, Twin City Fire Insurance Company.

Neal J. Levistsky, Esquire and Seth A. Niederman, Esquire, Fox Rothschild LLP, Wilmington, Delaware, and Michael R. Goodstein, Esquire, Bailey Cavalieri LLC, Columbus, Ohio, for appellee, Arch Insurance Company.

Carmella P. Kenner, Esquire, Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware, and Wallace A. Christensen, Esquire (argued) and Merril Hirsh, Esquire, Troutman Sanders LLP, Washington, D.C., for appellee, Federal Insurance Company.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

This is an appeal from a final judgment of the Superior Court that dismissed the complaint. The appellants are Dr. Henry T. Nicholas, III, William J. Ruehle, and Dr. Henry Samueli (the "Plaintiffs"); the appellees are National Union Fire Insurance Company of Pittsburg, PA, Twin City Fire Insurance Company, XL Specialty Insurance Company, Arch Insurance Company, and Federal Insurance Company (collectively, the "Insurers"). The Superior Court dismissed the complaint based solely upon its determination that a 2011 Settlement Agreement barred the Plaintiffs' claims as constituting an impermissible collateral attack on a 2009 Insurance Agreement. The Superior Court did not address the sufficiency of the Plaintiffs' allegations supporting their claims.

In this appeal, the Plaintiffs contend that the Superior Court should not have dismissed their claims under Superior Court Civil Rule 12(b)(6), because the 2011 Settlement Agreement is reasonably susceptible to the Plaintiffs' interpretation. Therefore, extrinsic evidence of the parties' intent is necessary to resolve any dispute over the 2011 Settlement Agreement's terms. We agree.

We conclude that the Superior Court erred in holding that, as a matter of law, the 2011 Settlement Agreement unambiguously precluded the Plaintiffs from asserting the claims that are at issue in this action. The intent of the parties in negotiating the 2011 Settlement Agreement is a factual question that is inappropriate for resolution on a Rule 12(b)(6) motion to dismiss. Therefore, the judgment of the Superior Court is reversed and this matter is remanded for further proceedings in accordance with this opinion.

***Facts*** [1]

Broadcom is "a multi-billion dollar public company and a worldwide leader in broadband communications and semi-conductors." The Plaintiffs have each served as Broadcom "high-level former and[/or] current directors and officers." Broadcom purchased $210 million in insurance coverage under eighteen separate policies by eleven insurance companies. The policies were arranged in a tower, with each policy triggered when the policy below it was exhausted by payment of indemnity and/or defense costs. Under the terms of the primary policy (the bottom policy), the insurer shall pay: "[T]he Loss of any Insured Person arising from a Claim first made against such an Insured Person for any Wrongful Act of such Insured person, except when and to the extent that an Organization has indemnified such Insured Person."

On May 25, 2006, a shareholder derivative action was brought on behalf of Broadcom in the United States District Court for the Central District of California (the "District Court"). The District Court action alleged that the Plaintiffs, along with fifteen others, "violated securities laws and breached their fiduciary duties in connection with the granting of stock options to Broadcom employees." Protracted settlement discussions between the insurance companies, Broadcom, the derivative plaintiffs, and others eventually resulted in a $118 million settlement (the "Partial Settlement") in which the derivative plaintiffs "released all of their claims against the settling officers and directors, with the exception of the claims against" the Plaintiffs. The Plaintiffs had been "excluded from the majority of the negotiations" because of pending criminal charges and because they refused to consent to any settlement that did not include all insureds.

On August 20, 2009, Broadcom and its insurance companies entered into a new insurance agreement (the "Insurance Agreement") to fund the Partial Settlement. Under the terms of that Insurance Agreement, the Plaintiffs would "retain all rights" under the original insurance policies "in all respects." However, upon payment by the insurance companies of the $118 million proceeds of the Partial Settlement. Broadcom would indemnify the insurance companies in the event of a claim by the Plaintiffs that either: (1) seeks coverage as to the released derivative action claims, or (b) includes *both* a bad faith claim and any other claim that would otherwise be indemnified by Broadcom (a "mixed claim").

The Partial Settlement was filed in the District Court on August 28, 2009. The terms of the Partial Settlement closely mirrored, explicitly adopted, and/or were conditioned on the terms of the Insurance Agreement. Dissatisfied with the terms of, and for having been excluded from, the Partial Settlement, Dr. Nicholas submitted pre-hearing papers objecting to its approval by the District Court. Mr. Ruehle joined Dr. Nicholas' objection to final approval of the Partial Settlement. Dr. Samueli withdrew his non-opposition to final approval of the Partial Settlement after his criminal charges were dropped—four days before the District Court conducted the hearing after which that court approved the Partial Settlement and issued its final judgment. The District Court approved the Partial Settlement, finding that it was "fair, adequate, and reasonable" and that

1. The undisputed facts are taken from the Superior Court's opinion. *Nicholas v. National Union Fire Ins. Co. of Pittsburgh, PA,* 2013 WL 1143514 (Del.Super.Ct. Mar. 19, 2013).

"there [was] no evidence that the settlement was the product of fraud, overreaching, or collusion. . . ."

The Plaintiffs appealed the ruling of the District Court. Dr. Samueli submitted a brief on appeal separately from Dr. Nicholas and Mr. Ruehle, who submitted one jointly. But, the Plaintiffs later dismissed their appeals as part of their own settlement agreement in the derivative action (the "2011 Settlement"). Under the 2011 Settlement, the Plaintiffs agreed not to make any claims that would obligate Broadcom to indemnify or to hold harmless any of the insurance companies pursuant to the indemnification terms of the Insurance Agreement. Although the terms of the 2011 Settlement allowed the Plaintiffs to take the position that the Insurance Agreement was "invalid and void," the Plaintiffs nevertheless agreed and covenanted not to make affirmatively any claims "seeking to invalidate or void the Insurance Agreement or any provision therein."

The Plaintiffs later filed a complaint in the Superior Court alleging: (1) Tortious Bad Faith against all defendants except Chartis Excess Limited, XL Insurance (Bermuda) Ltd., and Allied World Assurance Company, Ltd., and (2) Tortious Interference with Contract and/or Prospective Economic Advantage against all defendants. The Superior Court granted the Defendants' Joint Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(6). This appeal followed.

### *2011 Settlement Provision*

The 2011 Settlement provision at issue on this appeal is F.15, which reads:

> [Plaintiffs–Appellants] agree and covenant not to make any claims that would obligate Broadcom to indemnify or to hold harmless any of the Insurers pursuant to the terms of Paragraph 4 of the Insurance Agreement. While [plaintiffs-appellants] maintain that the Insurance Agreement is invalid and void, [plaintiffs-appellants] agree and covenant not to make any claims seeking to invalidate or void the Insurance Agreement or any provision therein.

Paragraph 4 of the Insurance Agreement states that Broadcom's indemnity obligation applies to "declaratory relief as to respective coverage rights and obligations under the Policies or breach of contract regarding failure to honor obligations or duties under the Policies ('a mixed claim')," *but does not extend* to "any obligation (i) to indemnify, or cover indemnity for, any judgment for (or portion of a judgment for) or settlement amount (or portion of a settlement amount) clearly or expressly allocable to a bad faith claim or (ii) to the payment of any defense costs for a bad faith claim that is not part of a mixed claim."

The Plaintiffs argue that "[u]nder Paragraph 4 of the Insurance Agreement, Broadcom does *not* have to indemnify Defendants for noncoverage claims and, specifically, for bad faith claims." The Plaintiffs urge that the first sentence of provision F.15 in the 2011 Settlement "expressly permits this action" and that "Defendants' reading of the second sentence . . . renders the first sentence null, an outcome that violates basic rules of contract interpretation."

The Superior Court acknowledged that under Paragraph 4 of the Insurance Agreement, the Plaintiffs could have brought their claim for bad faith against the Insurers. Therefore, the Superior Court also acknowledged that the first sentence in F.15 of the 2011 Settlement did not bar the Plaintiffs' claims in this action. The Superior Court concluded, nonetheless, that the only reason for bringing such

claims would have been to undermine or invalidate the Insurance Agreement.

According to the Superior Court, the *second sentence* in F.15 of the 2011 Settlement serves to "close[ ] the door" [2] on just that. The Superior Court found that the "[p]laintiffs' ... collateral attack is exactly what the second sentence [in the 2011 Settlement] was *designed* to combat." [3] The Superior Court held that, as a matter of law, the Plaintiffs' lawsuit was a collateral attack that is prohibited by the second sentence in F.15 of the 2011 Settlement Agreement. The court, therefore, granted the defendants' Joint Motion to Dismiss.

On appeal, the Plaintiffs argue that the second sentence in F.15 of the 2011 Settlement is not applicable because they have made no claim that either seeks to void or challenge the validity of the Insurance Agreement. Instead, Plaintiffs argue they are asserting bad faith claims that are expressly permitted by the plain language of Paragraph 4 of the Insurance Agreement. Alternatively, the Plaintiffs argue that, even if the 2011 Agreement does not unambiguously permit the Plaintiffs' claims, the Plaintiffs' proffered interpretation is one to which the 2011 Agreement is reasonably susceptible. The Plaintiffs contend that they have pled—and discovery will show—that the negotiating parties intended the 2011 Settlement to allow them to assert tort and bad faith claims against the Insurers.

### *2011 Settlement Ambiguous*

In their complaint, the Plaintiffs allege that they are "bring[ing] this action not for coverage under the Policies, but rather for damages arising out of the Insurance Companies' tortious conduct." The Plaintiffs further allege that they seek to recover damages resulting from the intentional bad faith and/or tortious actions of the Insurers, not for insurance policy proceeds. These claims, the Plaintiffs contend, are precisely the type that Paragraph 4 of the Insurance Agreement left open for the Plaintiffs to assert.

The Superior Court agreed that the Plaintiffs' bad faith and tort claims did not trigger the Indemnity Provision in Paragraph 4 of the Insurance Agreement. The Superior Court concluded, nonetheless, that such claims seek to "undermine and/or invalidate" the Insurance Agreement, and that the parties "*designed*" the second sentence of Provision F.15 to "close the door" on such claims. The Superior Court's interpretation is not based upon the plain language of the second sentence in the 2011 Settlement. Rather, it is based upon the intent (i.e. "design") that the Superior Court attributed to the parties. The Plaintiffs submit that an equally reasonable interpretation of the parties' intent permits the Plaintiffs to assert bad faith or other tort claims that would not trigger the Indemnity Provision of the Insurance Agreement and that would bar the Plaintiffs only from actually seeking to invalidate or void the Insurance Agreement. We agree that the Plaintiffs' alternative interpretation is reasonable.

An ambiguity exists "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings." [4] Where a contract is ambiguous, "the interpreting court must look beyond the language of the contract to ascertain the parties' intentions." [5] When there is

2. *Id.* at *4.

3. *Id.* (emphasis added).

4. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del.1997).

5. *Id.*

uncertainty in the meaning and application of contract language, the court may consider extrinsic evidence to arrive at a proper interpretation of contractual terms.[6]

We hold that it is impossible to conclude, as a matter of law, that the Plaintiffs' bad faith and tort claims amount to a collateral attack that seeks to "void or invalidate" the Insurance Agreement. Paragraph 4 of the Insurance Agreement expressly contemplates the prospect of a future "bad faith claim" and, moreover, specifically excludes such a bad faith claim from Broadcom's indemnity obligation. The Superior Court erred in concluding that the second sentence in F.15 of the 2011 Settlement Agreement unambiguously and as a matter of law precluded the Plaintiffs from bringing the claims asserted in this action. The parties must be allowed to conduct discovery to develop extrinsic evidence of the parties' intent with regard to the second sentence of F.15 in the 2011 Settlement.

### *Conclusion*

The judgment of the Superior Court is reversed. Should the Superior Court determine that the parties did not intend for the 2011 Settlement to bar the Plaintiffs' claims, it must then decide whether those claims are reasonably conceivable[7] so as to withstand the Insurers' Rule 12(b)(6) motions to dismiss. This matter is remanded to the Superior Court for further proceedings in accordance with this Opinion.

6. *Pellaton v. Bank of New York,* 592 A.2d 473, 478 (Del.1991). Contract language is not ambiguous simply because the parties disagree concerning its intended construction. The true test is what a reasonable person in the position of the parties would have thought it meant. *Rhone-Poulenc Basic Chem. Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1196 (Del.1992).

7. *Cent. Mort. Co. v. Morgan Stanley Mort. Capital Holdings LLC,* 27 A.3d 531, 536 (Del. 2011).