# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| In re BAY HILLS EMERGING PARTNERS I, L.P.; BAY HILLS EMERGING PARTNERS II, L.P.; BAY HILLS EMERGING PARTNERS II-B, L.P.; and BAY HILLS EMERGING PARTNERS III, L.P., Delaware limited partnerships | : : : : : : : | **C.A. No. 2018-0234-JRS** |

## MEMORANDUM OPINION

Date Submitted:  May 17, 2018
Date Decided:  July 2, 2018

A. Thompson Bayliss, Esquire and E. Wade Houston, Esquire of Abrams & Bayliss LLP, Wilmington, Delaware and James C. Rutten, Esquire and Erin J. Cox, Esquire of Munger, Tolles & Olson LLP, Los Angeles, California, Attorneys for Plaintiffs BHEP GP I, LLC; BHEP GP II, LLC; BHEP GP II-B, LLC; BHEP GP III, LLC; and Bay Hills Capital Management, LLC.

Kevin M. Gallagher, Esquire of Richards, Layton & Finger, P.A., Wilmington, Delaware and Mark C. Goodman, Esquire of Baker & McKenzie LLP, San Francisco, California, Attorneys for Plaintiffs/Nominal Plaintiffs Bay Hills Emerging Partners I, L.P.; Bay Hills Emerging Partners II, L.P.; Bay Hills Emerging Partners II-B, L.P.; and Bay Hills Emerging Partners III, L.P.

Brett D. Fallon, Esquire, Patricia A. Winston, Esquire and Travis J. Ferguson, Esquire of Morris James LLP, Wilmington, Delaware and Mark A. Cameli, Esquire, Ryan S. Stippich, Esquire and Brent A. Simerson, Esquire of Reinhart Boerner Van Deuren S.C., Milwaukee, Wisconsin, Attorneys for Defendants Kentucky Retirement Systems, Kentucky Retirement Systems Pension Fund, and Kentucky Retirement Systems Insurance.

**SLIGHTS, Vice Chancellor**

A limited partner in four Delaware limited partnerships invoked its "for cause" removal rights to remove the general partners of each of the four entities. The general partners challenge the *bona fides* of their removal. They filed this action against the limited partner and two related entities (collectively, "Defendants") to obtain declarations that the removal was improper and that they continue as the rightful managers of the limited partnerships. Shortly after this action was filed, the limited partner initiated litigation in the Commonwealth of Kentucky in which it seeks judicial declarations that its removal of the general partners was proper along with other legal and equitable relief.

Defendants have moved to dismiss this action principally on the ground that a forum selection clause in the relevant entity agreements requires Plaintiffs to litigate this dispute in Kentucky—more specifically, in Franklin County Circuit Court. I disagree and, thus, deny dismissal. The operative forum selection clause is permissive, not mandatory. It provides that Kentucky's Franklin County Circuit Court is *a* proper venue for the resolution of partnership-related disputes, but it does not designate that court as the *exclusive* forum for the resolution of such disputes. Nevertheless, because there is a nearly identical action pending in Kentucky—albeit one that was filed eight days after this action—and because the relevant entity agreements are principally governed by Kentucky law, the Court will stay this action *sua sponte* in favor of the Kentucky action.

# I. BACKGROUND

The facts are drawn from the complaint and documents incorporated therein as well as additional materials submitted by the parties in connection with Defendants' motion to dismiss.[1]

## A. The Parties

Plaintiffs are four Delaware limited partnerships (each a "Fund" and collectively the "Funds"),[2] their respective general partners (each a "Fund GP" and collectively the "Fund GPs"),[3] all of which are Delaware limited liability companies, and Bay Hills Capital Management, LLC ("Bay Hills"),[4] also a Delaware limited liability company. Bay Hills is an investment firm that created the Funds between 2007 and 2013 as "funds of funds"—"*i.e.*, investment funds that invest in underlying private equity funds"—pursuant to the Delaware Revised Uniform Limited Partnership Act ("DRULPA").[5] Around the same time, Bay

---

[1] *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007) (holding that under Rule 12(b)(3), "the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset" (internal quotation omitted)).

[2] The Funds are Bay Hills Emerging Partners I, L.P. ("Fund I") established in 2007, Bay Hills Emerging Partners II, L.P. ("Fund II") established in 2009, Bay Hills Emerging Partners II-B, L.P. ("Fund II-B") established in 2010, and Bay Hills Emerging Partners III, L.P. ("Fund III") established in 2013. Amended Verified Complaint ("Compl.") ¶¶ 5, 34.

[3] The Fund GPs are BHEP GP I, LLC ("Fund I GP"), BHEP GP II, LLC ("Fund II GP"), BHEP GP II-B, LLC ("Fund II-B GP") and BHEP GP III, LLC ("Fund III GP"). Compl. ¶¶ 18–21.

[4] Compl. ¶¶ 18–26. More specifically, the Funds are Nominal Plaintiffs as to Count I and Plaintiffs as to Count II. *Id.* at ¶¶ 22–25.

[5] Compl. ¶ 3.

Hills also created the Fund GPs to act as sole general partners of the Funds.[6] Bay Hills itself serves as the investment advisor for each Fund, and Bay Hills' employees manage and operate the Fund GPs.[7] All Plaintiffs are headquartered in San Francisco, California.[8]

Defendant, Kentucky Retirement Systems ("KRS"), is "a statutorily created entity that manages and administers the retirement system of the Commonwealth of Kentucky."[9] KRS is the sole limited partner of each of the Funds.[10] Defendants, Kentucky Retirement Systems Pension Fund and Kentucky Retirement Systems Insurance Fund, are also "statutorily created entit[ies]" responsible for "certain pension [and insurance] plans that KRS oversees and manages."[11]

---

[6] Compl. ¶¶ 1, 31, 34.

[7] Compl. ¶ 34.

[8] Compl. ¶¶ 18–26.

[9] Compl. ¶ 27; *see also* Ky. Rev. Stat. §§ 61.510–61.705; *Commonwealth v. Ky. Ret. Sys.*, 396 S.W.3d 833, 837 (Ky. 2013).

[10] Compl. ¶¶ 31, 34.

[11] Compl. ¶¶ 28–29.

**B. The LPA**

Each Fund is governed by a limited partnership agreement (the "LPA").[12]

Relevant to the parties' dispute are the LPA's provisions governing removal of

the general partner, forum selection and choice of law.

LPA § 7.4 addresses removal of the general partner, and provides:

> [each Fund's] General Partner may be removed as General Partner for Cause upon the written notice of the Limited Partner. Such written notice shall be delivered to the General Partner and shall state in reasonable detail the Cause for removal and the effective date of such removal, which effective date may be immediately upon delivery of the notice or thereafter; provided, however, that the General Partner shall have sixty (60) days from receipt of such notice to remedy or otherwise cure such Cause for removal. For purposes of this Section 7.4, "Cause" shall mean (i) the commission by the General Partner of any act of gross negligence or reckless or willful misconduct which, in each case, materially and adversely affects the Partnership, (ii) the conviction of the General Partner of any felony, or (iii) the commission by the General Partner of a material violation of applicable United Stated federal securities law.

LPA § 12.8, under the heading "Applicable Law; Jurisdiction and Venue,"

provides:

> [e]xcept as otherwise provided by the [DRULPA], this Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the Commonwealth of Kentucky (regardless of the choice of law principles of the Commonwealth of Kentucky or of any other jurisdiction). Each of the Partners hereby consents to the jurisdiction of the courts of the Commonwealth of Kentucky and further consents that venue shall lie in the Franklin Circuit Court located in Franklin County, Kentucky.

---

[12] According to the parties, the provisions relevant to this motion are substantially identical in each Fund's LPA. *See* Defs.' Opening Br. in Supp. of their Mot. to Dismiss ("Defs.' Opening Br.") 5; Compl. ¶ 34. Accordingly, I focus on the LPA provided as Exhibit 1 to the Complaint (the Agreement of Limited Partnership of Fund I).

## C. Purported Removal of the Fund GPs

On May 10, 2017, KRS served a notice of removal on the Fund GPs in which it claimed, among other things, that the Fund GPs (1) "engaged in willful and reckless disregard of KRS's rights" by replacing an auditor without consulting or obtaining approval from KRS, (2) manipulated overhead expenses in a grossly negligent manner and (3) deliberately attempted to misappropriate assets.[13] Given these infractions, KRS asserted it had "Cause" under the LPA to remove the Fund GPs as general partners of the Funds.[14] KRS withdrew its May 2017 notice of removal in July 2017.[15] The parties disagree as to the reasons for the withdrawal.[16]

On February 8, 2018, KRS served a second notice of removal on the Fund GPs.[17] In this second notice, KRS alleged, among other things, that Fund GP III materially breached Fund III's LPA by being "'lukewarm' to KRS' desired transfer of Fund III's assets and by not 'enthusiastically endors[ing] that course

---

[13] Compl. ¶¶ 8–10.

[14] Compl. ¶ 8.

[15] Compl. ¶ 11.

[16] Plaintiffs allege KRS withdrew the first notice of removal because it was "[u]nable to substantiate its accusations of 'Cause.'" Compl. ¶ 11. According to KRS, it "withdrew the removal notice without prejudice to re-instate it later . . . based on a number of commitments made by [the Fund GPs, Bay Hills and Lance Mansbridge, the managing partner of the Fund GPs]" with regard to their management of the Funds. Transmittal Aff. of Travis J. Ferguson in Supp. of Defs.' Mot. to Dismiss, Ex. A ("Kentucky Compl.") ¶ 126.

[17] Compl. ¶ 14.

5

of action.'"[18]  KRS has declined to withdraw the second notice, which purports to be effective as of April 9, 2018.[19]

## D.  Procedural Posture

On April 2, 2018, Plaintiffs filed their "Verified Complaint Pursuant to 6 Delaware Code §§ 17-110 and 17-111" along with a "Motion to Expedite and for Status Quo Order."  The Court heard Plaintiffs' motions on April 5, entered the parties' stipulated Status Quo Order and reserved decision on the motion to expedite.[20]  On April 9, Plaintiffs filed their "Amended Verified Complaint Pursuant to 6 Delaware Code §§ 17-110 and 17-111" (the "Complaint").[21] The Complaint sets forth two counts for declaratory relief: Count I seeks a declaration pursuant to 6 *Del. C.* § 17-110 and 10 *Del. C.* § 6501 that KRS lacks Cause to remove the Fund GPs and that the Fund GPs have a right to and do

---

[18] Compl. ¶ 14 (quoting Feb. 8, 2018 Ltr. from KRS, Compl. Ex. 9, at 5).  "In October 2016, Fund III experienced a so-called 'Key Person Event' when an important employee departed Bay Hills."  Compl. ¶ 12.  This occurrence gave KRS a contractual right to dissolve Fund III.  *Id.*  KRS took this opportunity and began transferring—or at least attempting to transfer—fund assets to KRS.  *Id.*  According to Plaintiffs, "all but two of the Underlying Funds [*i.e.*, the private equity funds in which the Funds invest, Compl. ¶ 43] have been unwilling to consent to the transfers that KRS has demanded."  Compl. ¶ 13.

[19] Compl. ¶ 15.

[20] Tr. of Hr'g Apr. 5, 2018, D.I. 52, 4–5.  The parties submitted a letter on the morning of the hearing providing the Court with a stipulated Status Quo Order and then reiterated their agreement on the Status Quo Order at the hearing.  *Id.*; *see also* D.I. 11 (Bayliss Ltr. Attaching Status Quo Order).  The Court granted the motion to expedite following oral argument on the motion to dismiss on May 17, 2018.  Tr. of Hr'g May 17, 2018 ("May 17 Tr."), 75:10.

[21] D.I. 18.

remain as general partners of the Funds[22]; Count II seeks a declaration pursuant to 6 *Del. C.* § 17-111 and 10 *Del. C.* § 6501 that the Fund GPs and Bay Hills "have not breached, materially or otherwise, any contractual duty or other legal duty in connection with the Funds."[23]

On April 10, Defendants filed an action in Franklin County, Kentucky, requesting "remov[al] of Bay Hills as its investment manager and [] recover[y] [of] damage[s] caused by Bay Hills' misconduct" (the "Kentucky Action").[24] Defendants bring nine counts in the Kentucky Action, one of which seeks a declaratory judgment that the Fund GPs were properly removed as general partners of the Funds.[25]

On April 12, Defendants filed their motion in which they seek dismissal of the Complaint on three grounds: (1) the LPA's forum selection clause; (2) the interests of comity and the doctrines of sovereign immunity and abstention; and (3) *forum non conveniens*.[26] According to Defendants, Plaintiffs were required to bring their claims in Kentucky pursuant to the LPA's mandatory forum selection clause. Alternatively, if the Court determines that the LPA does not mandate dismissal, Defendants argue that the Court should still dismiss because "Plaintiffs

---

[22] Compl. ¶¶ 87–88.

[23] Compl. ¶ 95.

[24] Kentucky Compl. ¶ 3.

[25] *Id.* at Count I.

[26] D.I. 26, 28. On April 13, Defendants also filed a motion to stay discovery. D.I. 28. I denied that motion at oral argument on May 17, 2018. May 17 Tr., 76:2–77:12.

seek to have the rights and obligations of the sovereign Commonwealth of Kentucky adjudicated in another state, even though the Kentucky legislature has unambiguously stated that the Commonwealth shall only be sued by a contractual counter-party in Franklin County, Kentucky."[27] Finally, Defendants contend that the doctrine of *forum non conveniens* mandates dismissal in favor of the Kentucky Action.

Plaintiffs counter that LPA § 12.8—the forum selection and choice of law provision—is not a mandatory venue provision but rather provides "that if one partner sues another partner in Franklin County, the defendant cannot move to dismiss for lack of jurisdiction or improper venue."[28] Moreover, Plaintiffs read 6 *Del. C.* § 17-109(d) as rendering the forum selection clause (if mandatory) unenforceable because Section 17-109(d) prohibits limited partners from waiving the right to litigate "matters relating to the organization or internal affairs of a limited partnership" in the courts of Delaware.[29] According to Plaintiffs, since KRS, a limited partner, did precisely that through LPA § 12.8, the provision violates Section 17-109(d) and is, therefore, unenforceable.

With regard to comity, Plaintiffs argue that Delaware has a strong interest in resolving disputes regarding the *de jure* management of a Delaware limited partnership and this interest must trump any notions of comity that may be

---

[27] Defs.' Opening Br. 17.

[28] Pls.' Answering Br. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Answering Br.") 17.

[29] *Id.* at 24 (quoting 6 *Del. C.* § 17-109(d)).

implicated here. As for sovereign immunity, Plaintiffs argue that the doctrine does not justify dismissal because (1) Delaware can exercise jurisdiction over Kentucky under federal and state law notwithstanding sovereign immunity; (2) the Section 17-110 claim is *in rem* and does not implicate sovereign immunity; and (3) Kentucky statutory law does not give KRS immunity from Delaware actions.

Finally, Plaintiffs contend Defendants have failed to show any "overwhelming hardship" that would justify dismissal on *forum non conveniens* grounds. According to Plaintiffs, their claims relate to the governance of Delaware entities so it would be peculiar, to say the least, for a Delaware court to dismiss the claims based on a finding that Delaware is not a convenient forum in which to adjudicate them.

## II. ANALYSIS

"The proper procedural rubric for addressing a motion to dismiss based on a forum selection clause is found under Rule 12(b)(3), improper venue. Although Delaware courts have, in the past, framed a forum selection clause analysis as jurisdictional in some sense, recent cases have all proceeded under Rule 12(b)(3)."[30] When addressing a motion under Rule 12(b)(3), "the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic

---

[30] *Bonanno v. VTB Hldgs., Inc.*, 2016 WL 614412, at \*5 (Del. Ch. Feb. 8, 2016) (internal quotation omitted).

9

evidence from the outset."[31]  In cases involving a contractual agreement to litigate in a particular forum, "the well-settled rule is that the court should give effect to the terms of private agreements to resolve disputes in [that] forum out of respect for the parties' contractual designation."[32]

## A.  The Forum Selection Clause

"The courts of Delaware defer to forum selection clauses and grant Rule 12(b)(3) motions to dismiss where the parties use express language clearly indicating that the forum selection clause excludes all other courts before which those parties could otherwise properly bring an action."[33]  "When a contract contains a forum selection clause, this court will interpret the forum selection clause in accordance with the law chosen to govern the contract."[34]

### 1.  No Choice of Law Analysis is Necessary

LPA § 12.8 provides, "[e]xcept as otherwise provided by the [DRULPA], this Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the Commonwealth of Kentucky (regardless of the choice of law principles of the Commonwealth of Kentucky or of any other jurisdiction)."  The parties agree

---

[31] *Troy Corp.*, 2007 WL 949441, at *2 (internal quotation omitted).

[32] *Id.*

[33] *Scanbuy, Inc. v. NeoMedia Techs., Inc.*, 2014 WL 5500245, at *2 (Del. Ch. Oct. 31, 2014) (internal quotation omitted).

[34] *Ashall Homes Ltd. v. ROK Entm't Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010).

that Kentucky law applies to the LPA[35] and "Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction."[36] Here, there is little doubt that the Commonwealth of Kentucky has a "material relationship" to the Funds and their internal governance; the limited partner in each of the Funds is a "statutorily created entity that manages and administers the retirement systems of the Commonwealth of Kentucky."[37]

The fact that Kentucky has a material relationship to the dispute, however, does not end the choice of law inquiry. In cases where there is a "false conflict"— meaning there is no material difference between the laws of competing jurisdictions—the court "should avoid the choice of law analysis altogether."[38] Such is the case here. As relates to the enforcement of forum selection clauses, Delaware and Kentucky law are in harmony. In both states, "forum selection clauses are prima facie valid" and will be enforced unless unreasonable.[39] Both jurisdictions define a valid waiver—such as the waiver of the right to bring an

---

[35] May 17 Tr., 41:23–42:7.

[36] *J.S. Alberici Const. Co., Inc. v. Mid-W. Conveyor Co., Inc.*, 750 A.2d 518, 520 (Del. 2000).

[37] Compl. ¶ 27. *Cf. Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1148 (Del. Ch. 2006) ("Our state respects choice of law provisions when the law chosen has a material relationship to the matter at issue, a requirement that is satisfied here because Nautical Systems operated out of Texas.").

[38] *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010).

[39] *See Ky. Farm Bureau Mut. Ins. Cos. v. Henshaw*, 95 S.W.3d 866, 867 (Ky. 2003); *Aveta, Inc. v. Colon*, 942 A.2d 603, 608 n.7 (Del. Ch. 2008).

action outside a particular forum—as "an intentional relinquishment or abandonment of a known right or privilege."[40] And, in both jurisdictions, forum selection clauses, like other contractual provisions, are interpreted consistent with the principle that "[w]here the [contractual language] is clear and unambiguous, courts [should] interpret the contract in accordance with the ordinary and usual meaning of the language."[41] Thus, there is no meaningful conflict of laws. Accordingly, the Court declines to undertake a choice of law analysis.

## 2. The Forum Selection Clause Is Permissive

Forum selection clauses may be permissive or mandatory. "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere."[42] In contrast, "[m]andatory forum selection

---

[40] *Mazik v. Decision Making, Inc.*, 449 A.2d 202, 204 (Del. 1982) ("In the civil realm, . . . a valid waiver must be voluntary, knowing and intelligently made, or 'an intentional relinquishment or abandonment of a known right or privilege.'" (internal citation omitted)); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001) ("Waiver is commonly defined as a voluntary and intentional surrender or relinquishment of a known right . . . ." (internal quotation omitted)).

[41] *Grosvenor Orlando Assocs. v. HCP Grosvenor Orlando LLC*, 2013 WL 3215704, at *2 (Del. Ch. June 26, 2013); *see also Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) ("[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.").

[42] 14D Charles Allan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (4th ed.) (2018 Westlaw Update) (hereinafter "Wright & Miller"); *see also In re Oakwood Homes Corp.*, 342 B.R. 59, 65 (Bankr. D. Del. 2006) ("Forum selection clauses are classified as either mandatory or permissive. A mandatory forum selection clause grants exclusive jurisdiction to a particular forum. A permissive forum selection clause, on the other hand, is nonexclusive.").

clauses contain clear language indicating that litigation will proceed exclusively in the designated forum."[43]

Here, LPA § 12.8 states, in relevant part:

> Each of the Partners hereby consents to the jurisdiction of the courts of the Commonwealth of Kentucky and further consents that venue shall lie in the Franklin Circuit Court located in Franklin County, Kentucky.

The plain meaning of this provision is that the parties to the LPA "consent" to the jurisdiction of Kentucky courts and to Franklin County Circuit Court as a venue. The provision, however, does not state (or otherwise imply) that Franklin County Circuit Court is the *exclusive* forum for the resolution of partnership-related disputes. Indeed, this construction of the provision's limited reach is supported by a comparison of LPA § 12.8 with the operative language of the contractual

---

[43] Wright & Miller, *supra*; *see also In re LMI Legacy Hldgs., Inc.*, 553 B.R. 235, 247 (Bankr. D. Del. 2016) (finding a forum selection clause mandatory where it provided "[e]ach party agrees that any action, claim, suit, or proceeding (each a 'Proceeding ') concerning the interpretations, enforcement and defense of the transactions contemplated by this Engagement Letter (whether brought against a party hereto or its respective affiliates, employees or agents) will be exclusively commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the 'New York Courts'). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith . . . ."); *Ashall Homes*, 992 A.2d at 1250 (explaining "a provision stating that a court shall have jurisdiction over any dispute [is] a mandatory, rather than permissive, grant of jurisdiction" (citing *Prestancia Mgmt. Gp., Inc. v. Va. Heritage Found., II LLC*, 2005 WL 1364616, at *7 (Del. Ch. May 27, 2005)); *Griffin v. Baker & Taylor, Inc.*, 2013 WL 610957, at *7 (W.D. Ky. Feb. 19, 2013) (finding clause at most permissive forum selection clause when it provided "[t]his Guaranty shall be governed by the law of the State of North Carolina, without giving effect to the conflict of laws provision thereof. Guarantor hereby consents to the jurisdiction of the State and Federal courts located in Charlotte, North Carolina").

provisions at issue in the very cases Defendants cite in support of their argument that Section 12.8 is mandatory.[44]  For example:

- In *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*,[45] the United States Circuit Court of Appeals for the Tenth Circuit found that the following provision was mandatory: "In the event that **any dispute** shall arise with regard to any provision or provisions of this Agreement, this Agreement shall be subject to, and shall be interpreted in accordance with, the laws of the State of Colorado. Jurisdiction **shall be** in the State of Colorado, and venue shall lie in the County of El Paso, Colorado."[46]

- In *Docksider, Ltd. v. Sea Technology, Ltd.*,[47] the United States Circuit Court of Appeals for the Ninth Circuit similarly found mandatory a provision stating: "Venue of **any action** brought hereunder **shall** be deemed to be in . . . Virginia."[48]

- In *Double A Home Care, Inc. v. Epsilon Systems, Inc.*,[49] the United States District Court for the District of Kansas interpreted as mandatory a clause stating: "**Should an action be commenced** by either Vendor or Agency with respect to this Agreement, then both the Vendor and Agency agree that said action **shall be venued** in the County of Ramsey, State of Minnesota."[50]

LPA § 12.8 does not provide that "any" or "all" actions brought by the parties "shall" be brought in Kentucky.  Instead, it provides that "[e]ach of the Partners [] **consents** to the jurisdiction of the courts of the Commonwealth of

---

[44] Defs.' Opening Br. 14–15.

[45] 106 F.3d 318, 321 (10th Cir. 1997).

[46] *Id.* (emphasis supplied).

[47] 875 F.2d 762, 763–64 (9th Cir. 1989).

[48] *Id.* (emphasis supplied).

[49] 15 F.Supp.2d 1114, 1115–16 (D. Kan. 1998).

[50] *Id.* (emphasis supplied).

14

Kentucky and further **consents** that venue shall lie in the Franklin Circuit Court located in Franklin County, Kentucky." With the inclusion of the consent language and the lack of language indicating that Kentucky is the exclusive forum—such as by the use of the term "any"—Section 12.8 does not contain **clear language** indicating that jurisdiction and venue must lie exclusively in Kentucky.[51] Accordingly, Defendants' motion to dismiss this action as a means to specifically enforce the LPA's forum selection clause is **DENIED**.

## B. This Action is Stayed

While Defendants chose not to request a stay as an alternative to dismissal, I am, nevertheless, satisfied that a stay of this action pending the resolution of the claims brought in Kentucky is appropriate.[52] A court may, "in the interests of comity and judicial efficiency, stay an action before it in favor of another with an identity of parties and issues pending in another forum."[53] In cases where the

---

[51] *Cf. Prestancia*, 2005 WL 1364616, at *7 ("The forum selection clause in the Security Agreement is mandatory, as it expressly requires any dispute under the Security Agreement to be litigated in Loudoun County, Virginia.").

[52] Defendants seem to have abandoned their *forum non conveniens* argument in support of dismissal, choosing not to address the issue at all in their reply brief or at oral argument on their motion to dismiss. *Cf.* May 17 Tr., 40:1–6 (Plaintiffs' counsel explaining it will not address *forum non conveniens* arguments because Defendants' counsel did not address the issue).

[53] *Scott v. Dondero*, 2014 WL 4406996, at *2 (Del. Ch. Sept. 8, 2014) (quoting *In re Molycorp, Inc. S'holder Deriv. Litig.*, 2014 WL 1891384, at *4 (Del. Ch. May 12, 2014)); *see id.* ("I *sua sponte* stayed litigation in this matter, pending the Texas court's resolution of the matters pending before it which will necessarily bear on issues here."); *see also Kingsland Hldgs. Inc. v. Fulvio Bracco*, 1996 WL 422340, at *2 (Del. Ch. July 22, 1996) ("[G]arnishees correctly point out that this Court may stay actions *sua sponte*." (citing *Council of S. Bethany v. Sandpiper Dev. Corp.*, 1981 WL 96484, at *2 (Del. Ch. Oct 21, 1981)).

Delaware action is filed first or simultaneously with the action in the other forum, the court, in determining whether to stay the Delaware action, will consider "the same factors determinative of a motion to dismiss for *forum non conveniens*."[54]

> [W]here two lawsuits are simultaneously filed-one in a Delaware state court and the other in a different forum-the Delaware court should decide a motion to stay the Delaware action as a discretionary matter, without giving deference to either party's choice of forum. In balancing all of the relevant factors, the focus of the analysis should be which forum would be the more easy, expeditious, and inexpensive in which to litigate. That approach, which imposes no special or heightened burden of persuasion, leads straightforwardly to the following burden of persuasion: towards which of the two competing fora do the *forum non conveniens* factors preponderate?[55]

In order to determine whether an action that was filed first but in close temporal proximity to another action should be given first-filed deference or instead be treated as simultaneously filed, "the Court takes into account the circumstances surrounding the filing of the actions."[56] "Ultimately, the exercise of the court's discretion will depend upon review of the relevant practical

---

[54] *Adirondack GP, Inc. v. Am. Power Corp.*, 1996 WL 684376, at *6 (Del. Ch. Nov. 13, 1996).

[55] *HFTP Invs., L.L.C. v. ARIAD Pharm., Inc.*, 752 A.2d 115, 122 (Del. Ch. 1999); *see also In re IBP, Inc.*, 2001 WL 406292, at *8 (Del. Ch. Apr. 18, 2001) ("Since the actions must be considered simultaneously filed, neither action commands the high ground which would otherwise force the court to approach the analysis in a manner which defers to a plaintiff's choice of forum." (quoting *Azurix Corp. v. Synagro Techs., Inc.*, 2000 WL 193117, at *4 (Del. Ch. Feb. 3, 2000)); *Rapoport v. Litig. Trust of MDIP Inc.*, 2005 WL 3277911, at *4 (Del. Ch. Nov. 23, 2005) (considering which forum of simultaneously filed actions the *forum non conveniens* factors preponderate towards); *Nat'l Union Fire Ins. Co. v. Turner Constr. Co.*, 2014 WL 703808, at *6 (Del. Super. Ct. Feb. 13, 2014) (same).

[56] *Lima Delta Co. v. Global Aerospace, Inc.*, 2016 WL 691985, at *4 (Del. Super. Ct. Feb. 19, 2016) (internal quotation omitted).

considerations keeping in mind the broader policies of comity between the states and their courts and the orderly and efficient administration of justice."[57]

Plaintiffs filed this Delaware action eight days prior to the filing of Defendants' Kentucky Action.[58] Defendants have suggested, however, that Plaintiffs filed this Delaware action seeking declaratory relief in anticipation of, and as a means to scuttle or confound, Defendants' Kentucky Action. Given the timing and content of the notices Defendants delivered to the Fund GPs, in which they clearly expressed their displeasure with the Fund GPs' performance and their view that a wide-reaching breach of the LPA had occurred, the timing of, and motives for, the Delaware filing are, at best for Plaintiffs, suspicious.[59] Under such circumstances, it is appropriate to deem the actions simultaneously filed and, accordingly, to give less deference to Plaintiffs' choice of forum.[60] It is also

---

[57] *Adirondack*, 1996 WL 684376, at *6.

[58] Under the circumstances presented here, as explained below, the temporal separation of eight days does not undermine a finding of contemporaneous filings. *See, e.g.*, *Nat'l Union Fire Ins.*, 2014 WL 703808, at *4 (finding contemporaneous filing where competing actions were filed nine days apart); *In re Chambers Dev. Co. Inc. S'holders Litig.*, 1993 WL 279335, at *7 (Del. Ch. May 20, 1993) (considering competing actions filed two weeks apart to be contemporaneously filed).

[59] Defendants served the removal notice on the Fund GPs on February 8, 2018; under LPA § 7.4, the Fund GPs had sixty days "from receipt of [the] notice to remedy or otherwise cure [the] Cause for removal"; this Delaware action was filed April 2, 2018; the sixty-day cure period expired on April 8, 2018; and the Kentucky Action was filed April 10, 2018. Compl. ¶ 14; *see* Kentucky Compl. 1.

[60] *Nat'l Union Fire Ins.*, 2014 WL 703808, at *3 ("The Court may consider if the suit was filed in anticipation of litigation when determining if deference is applicable. The anticipatory use of a declaratory judgment action 'for the purpose of gaining an affirmative judgment in a favorable forum requires a closer look at the deference historically accorded a prior filed action.'" (quoting *Playtex, Inc. v. Columbia Cas. Co.*, 1989 WL 40913, at *4 (Del. Super. Ct. Apr. 25, 1989)); *Williams Gas Supply Co. v.*

17

appropriate to dispense with the "special or heightened burden of persuasion" that would typically be implicated by the *forum non conveniens* analysis and instead consider "towards which of the two competing fora [] the *forum non conveniens* factors preponderate."[61]

In this instance, I am satisfied that the *Cryo-Maid* factors related to the convenience of litigation—access to proof, compulsory process, view of premises—do not favor either Delaware or Kentucky.[62] Both are equally convenient or inconvenient, depending upon one's perspective. The balance of the *Cryo-Maid* factors, however, point decisively to Kentucky. The Kentucky and Delaware Actions overlap substantially. The parties are functionally identical[63] and both actions will require the courts to adjudicate the same contract

---

*Apache Corp.*, 1991 WL 18091, at *2 (Del. Super. Ct. Feb. 12, 1991) ("Delaware courts have recognized that the use of a declaratory judgment action to anticipate and soften the impact of an imminent suit elsewhere for the purpose of gaining an affirmative judgment in a favorable forum requires a closer look at the deference historically accorded a prior filed action." (citing *Playtex*, 1989 WL 40913, at *4; *Air Prod. & Chem., Inc. v. Lummus Co.*, 252 A.2d 545, 547–48 (Del. Ch. 1968), *rev'd on other grounds*, 252 A.2d 543 (Del. 1969)).

[61] *HFTP*, 752 A.2d at 122. As is well-known, those factors are "(1) the relative ease of access to proof, (2) the availability of compulsory process for witnesses, (3) the possibility of a view of the premises, (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction, (5) the pendency or nonpendency of a similar action or actions in another jurisdiction, and (6) all other practical problems that would make the trial of the case easy, expeditious, and inexpensive." *Id.* at 122–23; *see also Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964).

[62] *Cryo-Maid*, 198 A.2d at 684.

[63] KRS initiated the Kentucky proceedings as sole Plaintiff against the Fund GPs, Bay Hills and Lance Mansbridge. *See* Kentucky Compl. ¶¶ 4–11.

dispute—namely, whether Defendants had "Cause" under the LPA to remove the Fund GPs as general partners of the Funds. The simultaneous procession of both actions risks the significant waste of scarce judicial resources and, more importantly, the inconsistent resolution of relevant issues.

Moreover, the parties agree that Kentucky law will govern the interpretation of the LPA. The construction and application of the LPA will dictate whether *vel non* the Fund GPs behaved properly and whether *vel non* they were properly removed. It is appropriate that a Kentucky court take the lead in interpreting Kentucky law.

I reject Plaintiffs' argument that deferring litigation of this dispute to a forum outside of Delaware would somehow violate positive law or Delaware's public policy. Section 17-109(d) of the DRULPA prohibits a limited partner from waiving (in a written agreement) its right to *maintain* an action "relating to the organization or internal affairs of a limited partnership" in Delaware.[64] The

---

[64] 6 *Del. C.* § 17-109(d)

> In a written partnership agreement or other writing, a partner may consent to be subject to the nonexclusive jurisdiction of the courts of, or arbitration in, a specified jurisdiction, or the exclusive jurisdiction of the courts of the State of Delaware, or the exclusivity of arbitration in a specified jurisdiction or the State of Delaware, and to be served with legal process in the manner prescribed in such partnership agreement or other writing. **Except by agreeing to arbitrate any arbitrable matter in a specified jurisdiction or in the State of Delaware, a limited partner may not waive its right to maintain a legal action or proceeding in the courts of the State of Delaware with respect to matters relating to the organization or internal affairs of a limited partnership.**

(emphasis supplied).

19

provision does not, however, mandate litigation of internal governance disputes in Delaware courts.[65]  Had the General Assembly intended to so mandate, it could have done so when it amended Section 17-109(d) in 2000 to add the provision at issue.

The general partners (managers) and limited partnerships brought this action in Delaware; the limited partner, KRS, chose instead to initiate litigation in the courts of Kentucky.  Staying this action would not *require* KRS to waive its right to maintain an action in Delaware regarding the limited partnership's internal disputes.  As a non-manager, it was free to initiate litigation outside of Delaware as it saw fit.

---

[65] Martin I. Lubaroff & Paul M. Altman, *Lubaroff & Altman on Delaware Limited Partnerships* § 2.3 at 2-11 (2011 Supplement) (Section 17-109(d) "gives the general partner the flexibility to be able to agree that it will only bring an action against a particular limited partner in the limited partner's home jurisdiction, which many limited partners require, and also protects the limited partners' ability to bring actions in the State of Delaware.").  This court has interpreted the provision similarly on several occasions although generally in the context of addressing 6 *Del. C.* § 18-109(d)—the LLC Act's analogue to Section 17-109(d).  *See, e.g.*, *Baker v. Impact Hldgs., Inc.*, 2010 WL 1931032, at *3 n.9 (Del. Ch. May 13, 2010) ("Section 18-109(d) only limits the behavior of members of an LLC who are not managers. Analogizing from the LLC context to the corporate context, the managers of an LLC would be akin to a corporation's directors and officers, while the nonmanager members of an LLC would be similar to a corporation's stockholders. . . . [T]he restriction in that provision preventing nonmanager members from waiving Delaware jurisdiction over suits involving the internal affairs of a Delaware business entity would not apply to someone in Baker's position."); *City of Providence v. First Citizens BancShares, Inc.*, 99 A.3d 229, 239–40 (Del. Ch. 2014) ("[I]n 2000, the General Assembly explicitly amended § 18-109(d) of the Limited Liability Company Act to prevent a Delaware LLC from mandating a foreign court as the exclusive forum for intra-entity disputes *asserted by its non-manager members . . . .*" (emphasis supplied)); *Kahuku Hldgs., LLC v. MNA Kahuku, LLC*, 2014 WL 4699618, at *5 n.29 (Del. Ch. Sept. 15, 2014) ("The prohibition in [Section 18-109(d)] is not at issue here, as it *only applies to protect a non-manager's right to maintain a legal action or proceeding* in the courts of Delaware, and [Plaintiff] is admittedly a manager of this LLC." (emphasis in original)).

The claims presented here do not implicate unique issues of Delaware law. Instead, they require a straightforward application of the LPA's contractual provisions as interpreted under the parties' bargained-for choice of Kentucky law. There is no legitimate point or purpose to be served by having this Court and the Kentucky court adjudicating these same issues at the same time. Accordingly, I find the *forum non conveniens* factors "preponderate" towards litigating this dispute in Kentucky and, thus, defer to Kentucky in the interests of the orderly and efficient administration of justice.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED.** This action is stayed immediately pending resolution of the Kentucky Action. Either party may apply to lift the stay should good cause warrant such an application.

**IT SO ORDERED.**